In re the WELFARE OF M.P., H.P., H.P. and L.P.

No. C5–95–1228.

Court of Appeals of Minnesota.

Jan. 23, 1996.

Thomas Bennet Wilson, III, Edina, for appellant L.P.

Candace Rasmussen, Third Judicial District Public Defender, Karl Sonneman, Assistant Public Defender, Winona, for appellant M.P.

Craig S. Nelson, Freeborn County Attorney, Erin M. O'Brien, Assistant County Attorney, Albert Lea, for respondent Freeborn County

Fred Wellman, Austin, for respondent guardian ad litem.

Joseph Buetel, Assistant Public Defender, Owatonna, for H.P.

Considered and decided by CRIPPEN, P.J., and KALITOWSKI and DAVIES, JJ.

## OPINION

CRIPPEN, Judge.

I.P., the mother of four children ages 7 to 14, challenges the trial court's termination of her parental rights. M.P., her eldest child, joins in disputing the decision respecting her relationship with her mother. Because the trial court's findings of fact do not address the children's best interests or critical issues bearing on the children's best interests, we reverse and remand for further consideration. Although we provide the same remedy for all four children, we observe a contrast between the weighty considerations supporting termination regarding the younger three children and the tenuous rationale for termination regarding M.P.

## FACTS

M.P., the oldest of I.P.'s children, reached age 15 two months after the May 1995 termination decision. I.P.'s former husband lost custody of the children in a divorce, lives out-of-state, and is not involved in these proceedings.

The trial court's termination decision was premised on statutory grounds that (a) I.P. was a palpably unfit parent;[1] (b) I.P. failed to correct the conditions leading to a prior determination that the children were in need of protection or services;[2] and (c) the children were neglected and in foster care.[3] The court's overall conclusions are premised on findings that (a) the children have special needs; (b) I.P. and/or the children have been involved with county services since 1983 and have received all relevant services the county has to offer, but I.P. is still unable to care for her children; (c) I.P.'s personality disorder will preclude her from being able to care for the children in the foreseeable future; (d) I.P. was aware of her case plan but did not follow its requirements; and (e) the children have been in foster care since 1991.

M.P. rests her appeal singularly on the contention that a child's best interests can preclude termination of parental rights and that the trial court's findings of fact do not adequately address her best interests. M.P.'s reasoning begins with the overall observation that the trial court made no finding that termination of I.P.'s parental rights was in the best interests of any of the children and instead only found that it was in the children's best interests to be put in a stable home. M.P. contends that the termination of her parental rights is precluded because of her personal wishes against the termination, which the trial court acknowledged in its findings of fact, and because M.P. is not a candidate for adoption.

I.P.'s appeal joins in M.P.'s contention regarding the children's best interests. I.P. also claims that there are other inadequacies in the trial court's findings of fact.

---

1. *See* Minn.Stat. § 260.221, subd. 1(b)(4) (1994) (parental rights may be terminated if a person "is palpably unfit to be a party to the parent and child relationship").

2. *See* Minn.Stat. § 260.221, subd. 1(b)(5) (parental rights may be terminated if, after a CHIPS determination, reasonable efforts by the county fail to correct the conditions leading to the CHIPS determination).

3. *See* Minn.Stat. § 260.221, subd. 1(b)(8) (parental rights may be terminated if children are neglected and in foster care).

## ISSUE

Did the trial court adequately address the children's best interests?

## ANALYSIS

■ Explaining again that "[t]here is perhaps no more grave matter that comes before the court than the termination of a parent's relationship with a child," the supreme court recently restated its long-held resolve to exercise great caution in termination proceedings and to abide by the legal maxim that

> [i]n determining whether termination of parental rights is appropriate, the best interest of the child is the paramount consideration.

*In re Welfare of A.D.*, 535 N.W.2d 643, 647–48 (Minn.1995); (citing *In re Welfare of J.J.B.*, 390 N.W.2d 274, 279 (Minn.1986)); *see In re Welfare of M.G.*, 407 N.W.2d 118, 120–21 (Minn.App.1987) (stating standard for reviewing decisions to terminate parental rights).

■ Respondents do not dispute M.P.'s contentions that because a child's best interests are the paramount consideration in proceedings to terminate parental rights, the trial court is precluded from terminating parental rights where the record does not show that termination is in the child's best interests and that this is true even if one or more of the statutory prerequisites for termination exist. We conclude that these are correct constructions of the law.

1. Paramount Nature of a Child's Best Interests

In proceedings to terminate parental rights, if one or more of the statutory prerequisites for terminating parental rights exist, "the best interests of the child must be the paramount consideration." Minn.Stat. § 260.221, subd. 4 (1994). While this statutory provision was enacted in 1988, the paramount nature of a child's best interests is a principle that has been part of Minnesota child welfare law for at least 100 years. *See* 1988 Minn. Laws ch. 514, § 8 (codification of paramount nature of child's best interests in termination proceedings); *J.J.B.*, 390 N.W.2d at 279 (noting that best interests doctrine "has long been recognized as the common thread in cases determining * * * the circumstances in which children are required to live" and adopting best interests doctrine "as a paramount consideration" in termination of parental rights cases); *State ex rel. Flint v. Flint*, 63 Minn. 187, 189, 65 N.W. 272, 272 (1895) (stating that, in a custody dispute, in spite of other considerations, including applications of statutory law, "[t]he paramount question was * * * what would be most for the benefit of the infant").

■ In concluding that a child's best interests can preclude termination of parental rights despite one or more of the statutory prerequisites to terminate parental rights, we are mindful that numerous applications of the best interests doctrine demonstrate its use in enhancing the cause for terminating parental rights. But a "paramount consideration," so valued by the legislature and a century of appellate jurisprudence, is one that, by definition, is of more weight and importance than other considerations. Indeed, the termination statute itself states that upon finding one or more of the prerequisites for terminating parental rights, the trial court "may" terminate parental rights. *Compare* Minn.Stat. § 645.44, subd. 15 (1994) (" '[m]ay' is permissive") *with* Minn.Stat. § 645.44, subd. 16 (1994) (" '[s]hall' is mandatory"). Finally, that a child's best interests can support a refusal to terminate parental rights is implicit in the supreme court's historic preference for avoiding the termination of parental rights or otherwise interfering in the parent and child relationship. *See A.D.*, 535 N.W.2d at 647 (noting the caution with which courts approach termination of parental rights and the presumption that a child's natural parent is a fit custodian); *J.J.B.*, 390 N.W.2d at 278 (stating that "[e]ven in those cases in which intentional abuse or neglect has been demonstrated, courts proceed with great care and deliberation in the termination of parental rights."); *Flint*, 63 Minn. at 189, 65 N.W. at 273 (noting "the courts will not lightly interfere with what may be termed the 'natural rights' of parents").

■ Because a child's best interests may preclude terminating parental rights where

one or more of the statutory prerequisites for termination are present, the trial court's findings in a termination case must address whether termination is in a child's best interests and, if so, explain the trial court's rationale for reaching that conclusion. In the case currently on appeal, the trial court did not make even conclusory findings tying the termination decision with the children's best interests, and the court did not address underlying best interest considerations put in issue by the parties.

2. M.P.'s Best Interests

■ a. Choice of child. The trial court terminated I.P.'s parental rights to M.P. two months before M.P. reached age 15. While one of the trial court's findings acknowledges that M.P. does not want her mother's parental rights terminated, the trial court does not indicate how this fact figured into its decision to terminate I.P.'s parental rights. M.P. claims that the trial court did not give enough weight to her preference against termination.

■ The choice of children old enough to express a preference about their custodial arrangement has always received significant weight in examining a child's best interests. *See, e.g., Gauthier v. Walter,* 110 Minn. 103, 106, 124 N.W. 634, 635 (1910) ("[W]hen the minor has reached an age sufficient to have an intelligent and well-defined preference, * * * it is apparent that his inclination must be taken into consideration, if regard is to be had for his best interests."); *Ross v. Ross,* 477 N.W.2d 753, 756–57 (Minn.App.1991) (when custody of a child is placed with a non-parent, the choice of an "older child" is of "predominant importance"). On this record, M.P. is clearly of an age and intellect to express a preference, and she did so. But without findings on how the trial court considered M.P.'s preference, we cannot review M.P.'s claim that the trial court did not give her preference sufficient weight.

■ b. Parent and child relationship. The law has long favored retaining long-term bonded relationships between children and their custodians. *See, e.g., A.D.,* 535 N.W.2d at 647 (noting presumption that a natural parent is a fit custodian); *Gauthier,* 110

Minn. at 106, 124 N.W. at 635 (reversing trial court's award of custody to parent where child lived with guardian for 13 years). *Cf. Maxfield v. Maxfield,* 452 N.W.2d 219, 223 (Minn.1990) (stating "the golden thread running through any best interests analysis is the importance * * * of [a child's] bond with the primary parent"); Minn.Stat. § 518.175, subd. 5 (1994) (the court "shall" modify visitation as is consistent with a child's best interests and not restrict visitation absent endangerment of child or parent's chronic failure in prior visitation); Minn.Stat. § 518.18 (1994) (severely proscribing modification of child custody arrangements). In the immediate case, where the mother's caretaking fitness is seriously questioned, but her oldest daughter desires preservation of the relationship she has with her mother, the court must consider the value, if any, of visitation contact of the mother and this child; in other words, the court must assess whether M.P.'s circumstances are those of a child whose interests can be enhanced by long-term foster care with occasional parental contact.

In an attempt to get information with which to address the mutual desires of M.P. and I.P. to preserve their relationship, the trial court asked the social worker about terminating parental rights to the younger two or three children but not the elder one or two. The social worker testified that (a) the children have a strong, though not always positive, relationship with each other; (b) the children to whom parental rights were terminated would view the termination as a failure on their part; (c) the result would be that the children to whom parental rights were terminated would use the child(ren) to whom parental rights were not terminated to communicate with I.P. with more harm being done to the children as a group than there was benefit to the child(ren) to whom parental rights were not terminated. The trial court made no findings that assess these purported aspects of the relationships among I.P. and her children, either in respect to M.P.'s best interests or to plans for the younger children.

c. Benefits of termination. M.P. also claims that termination of I.P.'s parental

rights is precluded by the fact that M.P. is not adoptable. Because of her age (15) and preference against adoption, statutory law supports M.P.'s contention. See Minn.Stat. §§ 259.24, subd. 3 (1994) (if a child over age 14 is to be adopted "the child's written consent * * * shall be necessary"); 645.44, subd. 16 (1994) (" '[s]hall' is mandatory").

■■■■ By claiming that her adoptability must be considered, M.P. is functionally claiming that any consideration of her best interests must be prospective. It is true that a narrow definition of "best interests" confined solely to the past would distort a fair understanding of the concept. And case law demonstrates that termination of parental rights requires prospective consideration of a child's best interests. See, e.g., J.J.B., 390 N.W.2d at 280 (stating that while the court must be cautious in terminating parental rights, "untoward delay of the demonstrated inevitable is intolerable"); In re Welfare T.M.D., 374 N.W.2d 206, 211–12 (Minn.App. 1985) (holding, where interaction between parent and child was healthy but parent had "deep mental problems," that trial court properly concluded it was in child's best interests to terminate parental rights before parent harmed child). A prospective consideration of a child's best interests necessarily requires consideration of the chance for a child's adoption. See In re Welfare of M.D.O., 462 N.W.2d 370, 379 (Minn.1990) (in addressing child's best interests, trial court considered, among other things, "the likelihood of adoption").[4]

■■■■ The trial court's findings do not explicitly consider M.P.'s future or balance the benefits of termination against M.P.'s loss of her relationship with her natural mother. The trial court evidently premises termination of I.P.'s parental rights to M.P. on M.P.'s need for permanence and stability, and the apparent assumption that these qual-

ities will be provided by termination. In cases where evidence supports the belief that a parent's relationship with his or her child is harmful to the child, the judiciary cannot simply assume that termination of parental rights will repair or lessen that problem and, based on that assumption, conclude that termination is in the child's best interests. Here, terminating I.P.'s parental rights may offer M.P. the worst of both worlds; M.P. will lose contacts with her natural mother but, because she is not adoptable, she still may be left in long-term foster care. See J.J.B., 390 N.W.2d at 280 (lamenting circumstances casting a child "adrift on a Sargasso Sea of foster care"). In other words, the circumstances of M.P. may represent a case where the prescription for long-term foster care is unfortunate but inescapable and the court's remaining contribution is to uphold conditions of care that are least harmful to the child. Absent findings on M.P.'s future, the trial court's consideration of M.P.'s best interests was incomplete.

## 3. Other Children's Best Interests

Many of I.P.'s arguments regarding the termination of her parental rights to the younger three children are similar to those made by M.P. Because the trial court's findings on the critical aspects of the younger children's best interests are as limited as they are for M.P., we make only the following comments in passing.

The younger children's ages now range from 7 to 13. To the extent that they are old enough and mature enough to express a preference and have done so, these preferences should be considered and weighted accordingly. See, generally, Maxfield, 452 N.W.2d at 223 ("[C]hildren come into this world one by one, and in deciding their future, this, too, must be decided one by one"). Regarding preserving the parent-child relationship, the

4. Some prior cases state that the imminence of adoption is not a consideration in a termination proceeding. See, e.g., In re Welfare of P.J.K., 369 N.W.2d 286, 292 (Minn.1985) ("nowhere in the [termination] statute is imminent adoption an element of a termination proceeding"); In re Welfare of D.C.M., 443 N.W.2d 853, 854 (Minn. App.1989) (citing P.J.K.), review denied (Minn. Sept. 21, 1989). But P.J.K. and was decided

before J.J.B., which explicitly made a child's best interests the "paramount" consideration in termination proceedings. D.C.M., which cites P.J.K., was decided before the supreme court issued M.D.O. As noted earlier, the statutory declaration that the child's best interest is a paramount consideration in termination cases was enacted in 1988. 1988 Minn. Laws ch. 514, § 8.

record indicates that visitation has been problematic and that the evidence of bonding between I.P. and the younger children is generally weaker than it is for I.P. and M.P. Similarly, the benefits of termination or the effect of permanent placements of the children should be considered.

 We further note that the trial court did not address the county's failure to put the children in an out-of-home placement with their aunt and that this failure is contrary to the statutory preference for out-of-home placements with relatives. Minn.Stat. § 260.181, subd. 3 (1994). The county argues that the children can be placed with their aunt after termination. While true, the statute requires application of the relative preference whenever the court transfers legal custody of any child, not just transfers occurring after termination. *Id.* On remand, the trial court must address the county's refusal to implement the statutory placement preference.

4. Other Issues

 Neither I.P. nor M.P. challenge the finding that I.P. is currently unable to care for the children. But the record contains the testimony of I.P.'s therapist that at least a partial reunification could occur in about 18 months. Other testimony states that the children need stability as soon as possible and that there are no relevant county services that have not already been unsuccessful. Indeed, one expert testified that psychologists do not know how to treat I.P.'s personality disorder. Also, while the trial court made findings on I.P.'s conduct, most of the findings do not relate to I.P.'s current conduct. *See In re Welfare of Clausen,* 289 N.W.2d 153, 156 (Minn.1980) (stating that in termination cases, trial court must consider parent's conduct up to time of trial). On remand the trial court must explicitly address the possibility of reunification and I.P.'s conduct up to the time of trial.

I.P. claims that the county's reunification efforts were not reasonable and that the county's development of case plans for reunifying the family was defective. We do not address these arguments. In the case of the former, with the exception of the county's failure to place the children with their aunt, we see no factual basis for the claim on this record. In the case of the latter, the argument is not fully developed, and we see no facial problem with the development of the case plans.

## DECISION

The termination of I.P.'s parental rights is reversed and remanded. On remand, the trial court must address each child's best interests in a manner consistent with this opinion, and the court has discretion to reopen the record and to modify its prior ruling as necessary in light of its findings of fact on remand. The trial court is also to address the possibility of reunification and I.P.'s conduct up to the time of trial.

Remanded.