In the Matter of the WELFARE OF
D.T.J., D.L.H., A.M.J. and J.L.J.

No. CX–96–1025.

Court of Appeals of Minnesota.

Oct. 8, 1996.

Michael O. Freeman, Hennepin County Attorney, Jennifer J. Johnson, Assistant County Attorney, Minneapolis, for Respondent.

William R. Kennedy, Hennepin County Public Defender, Peter W. Gorman, Assistant County Public Defender, Minneapolis, for Appellant.

Considered and decided by WILLIS, P.J., and LANSING and KALITOWSKI, JJ.

## OPINION

LANSING, Judge.

This is an appeal from an order for the termination of a mother's parental rights to four children. Substantial evidence supports the district court's determinations that the county made reasonable efforts to provide the mother with remedial services and that the services failed to correct the conditions for which they were ordered. The district court also made sufficient written findings to support its conclusion that the termination was in the best interests of the children. We affirm.

## FACTS

K.J. is the mother of D.T.J., age nine; D.L.H., age eight; A.M.J., age six; and J.L.J., age three. The mother is unmarried, and none of the children has an adjudicated father. Two of the children have special needs: A.M.J. has Down's Syndrome, and D.T.J. has Attention Deficit/Hyperactivity Disorder.

The district court first ordered the children to be placed outside the mother's home in April 1993 when the youngest child was one month old. The placement followed a petition by the Hennepin County Department of Children and Family Services alleging that the children were in need of protection or services due to the mother's abuse of cocaine. After a hearing on October 13, 1993, the court adjudicated the children as being in need of protection or services and ordered the mother to comply with a case plan that addressed her chemical dependency problems.

For the first several months after the CHIPS adjudication, the mother made moderate progress with her case plan. In August 1994 the district court allowed D.T.J. and D.L.H. to return to their mother's home under protective supervision. On January 12, 1995, the county became aware of the recurrence of the mother's problems in caring for the children. On that day the mother had left D.L.H. and D.T.J. with a friend but failed to return for them. The children were then placed in a foster home where their two younger siblings had been staying for over one year. When the mother eventually contacted the foster home on January 15, 1995, she was still unaware that D.L.H. and D.T.J. were no longer staying at the house where she had left them three days earlier. The children informed the county that their mother was again using cocaine, that she was preparing drugs for others, and that she had a physically abusive boyfriend. After the children returned to foster care, the mother received emergency medical treatment for a particularly severe incident of abuse in February 1995.

The county subsequently filed a petition to terminate the mother's parental rights to the four children. On October 24, 1995, the parties agreed to the terms of a conditional stay of an order for the termination of the mother's parental rights. The district court approved the parties' settlement and stayed the order subject to the conditions that she "maintain sobriety" and "establish a safe environment for her children and demonstrate appropriate parenting." More specifically, the court conditioned the stay on the following requirements: (1) successful completion of a chemical dependency aftercare program; (2) documented attendance at weekly Alcoholics Anonymous (AA) and Narcotics Anonymous (NA) meetings; (3) clean urinalyses twice a week for three months, and then on a random testing basis; (4) successful completion of a domestic abuse program; (5) successful completion of a parenting program; (6) regular visitation with her children; (7) stable housing apart from her boyfriend, E.J., until his successful completion of a treatment program; and (8) providing for medical and educational needs by attending school conferences and the children's therapy sessions.

The county moved to revoke the stay on January 23, 1996, on the ground that the mother had allegedly failed to comply with the conditions of the stay.

Under the terms of the stay, the mother was "entitled to a hearing on the issue of whether she failed to comply with the court's order." The mother requested a hearing. She admitted that she had not complied with the conditions of the stay, but suggested that she would have been able to comply if not for difficulties that she allegedly had traveling from her home in St. Paul to appointments in Hennepin County and arranging child care for a child to whom she gave birth in early October 1995. Also testifying at the hearing were: a unit director for the chemical dependency program from which the mother withdrew after several missed sessions; the children's foster mother, who testified that the mother failed to attend scheduled appointments and visitation meetings; and the mother's social worker, who testified that the mother had substantially failed to fulfill the conditions of the stay.

The district court concluded that the county had made reasonable efforts to assist the mother in complying with the conditions of the stay, but that she failed to comply. The court also found that the termination of the mother's parental rights would be in the best interests of the children. The court revoked the stay in an order dated April 18, 1996, and the mother appeals from that order.

## ISSUES

I. What is the evidentiary standard of the reviewing court for determining whether a petitioner in a proceeding to terminate parental rights has adequately established a ground for the termination under Minn.Stat. § 260.221, subd. 1(b) (Supp.1995)?

II. Does the evidence sufficiently support the district court's conclusion that the county made reasonable efforts to provide the mother with rehabilitative services?

III. Did the district court provide an adequate statement of its reasons for concluding that the termination of parental rights would be in the best interests of the children?

## ANALYSIS

The mother argues that the district court erred in determining that the county had made reasonable efforts to provide her with rehabilitative services. She also claims that the district court made inadequate findings to support its conclusion that the termination of her parental rights would be in the best interests of the children.

### I

■ Our standard for reviewing an order for the termination of parental rights requires us to consider: (1) whether the district court has addressed the proper statutory criteria, (2) whether the court's findings are clearly erroneous, and (3) whether substantial evidence supports the district court's determinations. *In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn.1990). The parties dispute the meaning and application of the second and third prongs of this standard, and K.J. asserts that the standard is inconsistent with the county's burden of providing clear and convincing proof.

■ The "clearly erroneous" element of our review of the district court's findings derives from Minn. R. Civ. P. 52.01, which provides that "[f]indings of fact * * * shall not be set aside unless clearly erroneous." *See In re Welfare of J.M.S.*, 268 N.W.2d 424, 428 (Minn.1978) (citing Minn. R. Civ. P. 52.01). Under this component of the standard of review, a district court's individual fact findings will not be set aside unless our review of the entire record leaves us "with a definite and firm conviction that a mistake has been made." *In re Estate of Beecham*, 378 N.W.2d 800, 802 (Minn.1985) (citation omitted). If, for example, the district court had terminated the mother's parental rights on the sole ground that she had ignored a court order to contribute financially to the support of her children, under Minn.Stat. § 260.221, subd. 1(b)(3) (Supp.1995), we would be compelled to reverse the termination, because there is no such order in the record.

The concept of "substantial evidence" is a distinct principle and relates to the quantum of evidence required to sustain a determination of the district court on appeal. "Substantial evidence" as used in appellate review of decisions terminating parental rights must not be confused with the phrase as it is used on certiorari review of administrative decisions. In the context of reviewing agency decisions, the phrase has been defined as "more than a scintilla of evidence," "more than some evidence," and "more than any evidence." *Cable Communications Bd. v. Nor–West Cable Communications Partnership*, 356 N.W.2d 658, 668 (Minn.1984). Outside the context of administrative proceedings, however, "substantial evidence" takes on a different meaning relative to the burden of proof applicable at the district court level.

■ In other words the applicable quantum of evidence defined by "substantial evidence" in a given case on appeal from a nonadministrative decision will vary according to the burden of proof that a party is required to satisfy in the district court for such a case. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) ("[T]he judge must view the evidence presented through the prism of the substantive evidentiary burden."). In a case where the district court's decision is governed by a "preponderance of the evidence" burden of proof, for example, we will review the record for substantial evidence that the preponderance of the evidence burden was met. We require a different quantum of "substantial evidence" on appeal before we may uphold a decision for a case where a "clear and convincing" burden

of proof applies in the district court. Similarly, our review of a district court decision made according to a "beyond a reasonable doubt" burden of proof will require yet another quantum of evidence to satisfy the "substantial evidence" standard on review. Thus, substantial evidence as a review standard will vary according to the burden of proof applicable at the district court level.

■ In reviewing termination of parental rights, we determine whether the record contains substantial evidence to support the district court's decision, given that the burden of proof in the district court is "clear and convincing" evidence. Minn. R. Juv. P. 59.05 ("[A]llegations of the petition must be proved by clear and convincing evidence."); *In re Welfare of Rosenbloom*, 266 N.W.2d 888, 889–90 (Minn.1978); *see also In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980) (stating that reviewing court will "closely inquire into the sufficiency of the evidence to determine whether the evidence is clear and convincing").

## II

■ The district court asserted two grounds for terminating the mother's parental rights in this case: (1) the mother was palpably unfit to be a parent, under Minn. Stat. § 260.221, subd. 1(b)(4) (Supp.1995), and (2) reasonable efforts to correct the conditions leading to the 1993 CHIPS adjudication had failed, under Minn.Stat. § 260.221, subd. 1(b)(5) (Supp.1995). A determination on whether "reasonable efforts" have been made is required before parental rights can be terminated for either reason. *In re Welfare of S.Z.*, 547 N.W.2d 886, 892 (Minn. 1996).

In determining whether the county has made "reasonable efforts," we must consider whether the county offered services that were: "(1) relevant to the safety and protection of the child; (2) adequate to meet the needs of the child and family; (3) culturally appropriate; (4) available and accessible; (5) consistent and timely; and (6) realistic under the circumstances." Minn.Stat. § 260.012(c) (1994). Whether efforts are "reasonable" also "requires consideration of the length of time the county has been involved with the family as well as the quality of effort given." *In re Welfare of M.G.*, 407 N.W.2d 118, 122 (Minn.App.1987) (citing *In re Welfare of J.J.B.*, 390 N.W.2d 274, 281 (Minn.1986)).

The mother contends that the conditions of the stayed order were unrealistic under the circumstances and that the county's services were inaccessible to her. Her primary argument centers on the location of the services that the county provided. Most of the conditions of the stayed order required the mother to travel to Minneapolis for appointments, yet she lived in St. Paul. She argues that, under a "reasonable efforts" standard, the county should have allowed her to obtain services in St. Paul in order to satisfy the conditions of the stay. For the conditions that she could satisfy only by going outside St. Paul, she asserts that the county should have provided her with transportation in the form of unlimited-ride bus passes for every month of the stay. As an additional argument, the mother claims that the county failed to make reasonable efforts to assist her in obtaining child care services for a fifth child, a son to whom she gave birth a few weeks before the district court imposed the conditions of the stayed order.

The district court found that the mother had not fulfilled eight conditions of the stay. Of these, two did not require her to attend appointments outside St. Paul: (1) documented attendance at AA and NA meetings, and (2) the procurement of safe and stable housing, apart from her abusive boyfriend until he successfully completed domestic abuse treatment. The district court found that the mother failed to document her attendance at AA or NA meetings at any location, that she allowed people to stay with her who engaged in behavior that prompted police visits to her home, and that she maintained contact with her boyfriend although she provided no documentation that he completed a domestic abuse treatment program. The record supports these findings and the district court's determination that the mother had failed to satisfy these two conditions of her stay, neither of which was dependent on any assistance from the county that the mother claims not to have received.

■ The district court also found that the mother had failed to complete a parenting program, a third condition of the stay. The mother admits to missing three consecutive sessions of the program, even though the program provided her with transportation to its biweekly meetings. In addition to noting the mother's incomplete attendance, the district court found that the mother's limited interaction with her children during the stay demonstrated that she failed to acquire the types of skills that the parenting program was designed to teach. Although the mother remained enrolled in the program at the time the district court ordered the termination of her parental rights, we conclude that evidence of her conduct adequately supports a finding of substantial noncompliance with the parenting program requirement.

■ Three conditions of the stay involved services that required the mother to travel to Minneapolis by some means of transportation other than the direct van rides that the parenting program provided: a domestic abuse treatment program, a chemical dependency aftercare program, and urinalyses. The mother never completed the intake process for a domestic abuse program in Minneapolis that she was scheduled to begin in November 1995. She later failed to provide her social worker with additional requested information about an alternative program that she proposed in St. Paul, and she ultimately did not participate in any domestic abuse program.

The chemical dependency aftercare program and urinalyses were scheduled to begin in Minneapolis on October 30, 1995. Although the mother should have completed the twenty sessions of the group session portion of her aftercare program by the end of the following month, she attended only eight or nine sessions and frequently arrived late. She also failed to appear for her urinalyses on several scheduled dates, including test dates in November 1995. To accommodate the mother's transportation needs, the county provided her with an unlimited-ride bus pass for that month. The county later provided her with a ten-ride pass, and the mother's social worker indicated that he would have provided her with additional cards if she could have demonstrated that she had used up her rides in connection with traveling to her various programs. The county also provided compensation for a babysitter whom the mother hired to care for her newborn son. Although the babysitter was later unavailable, the mother's social worker claims that the county would have provided funding for other daycare services if the mother had requested them. Viewing the social worker's actions in combination with the mother's conduct, we conclude that substantial evidence supports the conclusion that the county made "reasonable efforts" to assist the mother in complying with the domestic abuse program, chemical dependency program, and urinalyses conditions of the stayed order.

■ The final two conditions of the stay required the mother to "visit her children on a regular schedule" and to attend her children's school conferences and some of their therapy sessions. The mother missed several appointments, particularly scheduled visits with her children. She asserts lack of transportation as the primary reason for her failed attendance, yet several of her missed visits occurred in November 1995, a month in which the county provided her with an unlimited-ride bus pass. According to the foster mother, who supervised the visits, when the mother did visit with her children, she did not always interact closely with them, but spent much of her visits talking on the telephone. While the county attempted to enhance the quality of the visits by changing the meeting sites for the visits, the mother continued to attend them only irregularly and eventually stopped attending them altogether.

Although the mother claims that the conditions of the stay were unrealistic under the circumstances and that the county's services were inaccessible, we conclude that the record contains substantial evidence to support the district court's contrary conclusion—that the county made reasonable efforts to assist her in complying with all of the conditions of the stay.

### III

Finally, the mother argues that the district court made insufficient findings in support of

its conclusion that the termination of her parental rights would be in the best interests of the children.

■ An order for the termination of parental rights must explain the district court's rationale for concluding why the termination is in the best interests of the children. *In re Welfare of M.P.*, 542 N.W.2d 71, 74–75 (Minn.App.1996); *see also* Minn. R. Juv. P. 62.05 (requiring that disposition order "set forth in writing * * * why the best interests of the child are served by the disposition ordered"). In *M.P.*, this court reversed a parental termination order on the ground that the district court had not made "even conclusory findings tying the termination decision with the children's best interests, and the court did not address underlying best interest considerations put in issue by the parties." *M.P.*, 542 N.W.2d at 75.

■ The district court concluded that the termination of K.J.'s parental rights would be in the best interests of the children, because "[t]hey have been in foster care well over a year," and because "[t]heir mother has not been able to correct the conditions that led to that foster care placement after repeated attempts." These findings distinguish this case from *M.P.*, and they provide adequate support for the district court's conclusion that the termination of the mother's parental rights would be in the children's best interests.

### DECISION

Because the district court made adequate written findings and the findings are supported by substantial evidence, we conclude that the court did not err in revoking its stay to terminate the mother's parental rights.

**Affirmed.**