### In the Matter of the Welfare of A.J.C. and R.L.K., Children.

#### No. C8–96–1282.

Court of Appeals of Minnesota.

Dec. 24, 1996.

John G. Westrick, Kari L. Clark, Westrick & McDowall–Nix, P.L.L.P., St. Paul, for Appellant–Mother.

Thomas J. Harbinson, Scott County Attorney, Susan K. McNellis, Peggy Flaig Hellier, Assistant County Attorneys, Shakopee, for Respondent.

Joan Miller, Shakopee, Guardian ad Litem.

Considered and decided by SHORT, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

On this appeal from an order terminating her parental rights, following our earlier remand of the case for further trial court findings, the children's mother renews her assertions that the court failed to make vital findings and that other critical findings are not supported by the evidence. Most pointedly, she contends (a) that there are neither findings nor evidence to permit an ultimate determination that her present circumstances threaten the children with the pattern of neglect that occurred earlier, or that more neglect can be expected for the indefinite future, and (b) that neither the evidence nor the findings show that the petitioning agency can, through termination of parental rights, achieve benefits for the children that are sufficient to offset the resulting harm to the children. Based on a painstaking review of the record, we affirm.

## FACTS

Appellant S.M. is the mother of three children, two of whom are subject to the current action: A.J.C., born in April 1987, and R.L.K., born in March 1990.

Appellant requested that Scott County place her children in foster care while she underwent surgery. The voluntary placement agreement provided that the county would place A.J.C. and R.L.K. in foster care in March 1994 and that they would return home one week later. Six days later, appellant asked to continue foster care, because she was concerned about her sobriety, her stability, and her ability to create a good home for the children. She and the social worker agreed to continue foster care for two additional weeks and to have appellant undergo a mental health diagnostic assessment, undergo a psychiatric consultation, and continue chemical dependency treatment.

When appellant failed to pick up her children at the end of the scheduled foster care term and made no contact with the social worker for several additional days, the county filed a CHIPS petition. Appellant admitted the petition, and the court adjudicated A.J.C. and R.L.K. in need of protection or services and transferred their legal and physical custody to Scott County Human Services.

The court approved a case plan and reunification plan in May 1994. The plan required appellant to complete a certified aftercare program and maintain sobriety; to complete all conditions of her probation; to complete a parenting course; to complete a psychological assessment and follow its recommendations; to complete a medication evaluation with a psychiatrist and follow recommendations; and to obtain paid employment and suitable, permanent housing by August 1994. The plan also included a visitation schedule, under which appellant would visit both children each Sunday in May, each Saturday and Sunday in June, and every weekend from Friday to Sunday in the month of July; her visitation would gradually increase until the proposed reunification in August. The visitation schedule also required appellant to call each child a minimum of one time per week.

The August 1994 reunification did not occur because appellant had not complied with these conditions. Over the next ten months, the court and appellant set four more reunification dates, each of which failed because appellant's rehabilitation was not complete. Before the last reunification date in June 1995, the county received a report of appellant's maltreatment of R.L.K. that halted the reunification process. After visitation with appellant, R.L.K. had returned to her foster home with a bruise on her right buttock. R.L.K. explained that her mother had spanked her bare bottom with an open hand, causing the quarter-sized bruise. The investigation of this incident also revealed that the

children feared appellant when she was angry and that R.L.K. had been the victim of inappropriate sexual touching from both her brother, A.J.C., and her older sister, S.S.

Having determined that maltreatment had occurred and the children needed protective services, the county petitioned the court to terminate appellant's parental rights. After trial, the court terminated parental rights based on its finding that appellant had failed her duties in the parent-child relationship and that the county's reasonable efforts at reunification had failed.

On appeal of the termination decision, this court agreed with appellant's contentions that the trial court had failed to evaluate the best interests of the children and may have overlooked appellant's rehabilitation.

On the subject of appellant's rehabilitation, we observed in our earlier order (a) that in June 1995, the trial court approved reunification of the children with appellant when she obtained appropriate day care, (b) that this plan failed only because of a report that appellant mistreated R.L.K. in June, and (c) that the trial court failed to determine if the alleged abuse occurred. We remanded for findings showing whether the incident occurred as reported. In addition, showing our concern for the evidence that reunification was judged appropriate before the incident, we demanded findings on the "impact" the incident had on the trial court's ultimate finding of neglect.

On the contention that termination of parental rights conflicted with the best interests of the children, we asked for findings to show if termination was in the best interests of the children and for a statement of the court's rationale for its best interests conclusion. We instructed the court to find "whether the benefits of termination outweigh the loss of the children's relationship with appellant."

On remand, the trial court made modified findings without taking further evidence. The court found that the June 1995 abuse report indicated that R.L.K. was "bruised as a result of a spanking" and that A.J.C. said appellant spanked him during the same weekend visitation. The court then found (a)

that the "maltreatment" occurred, (b) that there was "bruising" on R.L.K.'s buttock, (c) that R.L.K. was spanked "excessively," (d) that appellant "was unable to control her anger," and (e) that this made it "unsafe" to have appellant care for the children.

The trial court did not respond on the remand instruction that it state the impact of the spanking incident on the ultimate finding of neglect. Enlarging appellant's concern that the trial court ignored her present situation, the court added a finding that a recurrence of problems "experienced in the past" would endanger the child, without stating the prospect that such incidents would be repeated.

The trial court's best interests findings, added on remand, addressed appellant's parenting disabilities and stated that appellant had "only sporadically exercised her visitation rights" while the children were in foster care. The court left intact its earlier statement that future visitation contacts of appellant might be appropriate. It stated:

> If the children's psychologists deem it in the children's best interest, respondent may still be able to have contact with her children.

In its added findings, the court said that foster care provided the children a better environment than the care that their mother had given in the past, and the court left unchanged its previous observation, after stating the needs of the children for competent care, that "[l]ong term foster care or adoption may provide them with that."

## ISSUE

Is cause for termination of mother's rights sufficiently demonstrated by evidence on the record and the trial court's findings of fact?

## ANALYSIS

 This court follows "very stringent standards" when reviewing termination orders. *In re Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn.1980). Indeed, the statute providing for protection of children seeks to strengthen and preserve the child's family ties whenever possible. Minn.Stat. § 260.011, subd. 2(a) (1996). Consequently, the petitioner bears the burden of overcom-

ing the presumption that a natural parent is "a fit and suitable person to be entrusted with the care of the child." *Chosa*, 290 N.W.2d at 769. But a parent's right to custody exists only when the parent promptly recognizes and fulfills her corresponding parental obligations. *In re Welfare of A.D.*, 535 N.W.2d 643, 648 (Minn.1995) (citing *In re Welfare of H.G.B.*, 306 N.W.2d 821, 825 (Minn.1981)).

### 1. Best interests.

In our earlier remand order, we instructed the trial court to make findings on the best interests of the children, including a weighing of the benefits and harm associated with termination of appellant's rights. The subsequent findings add the consideration that appellant only "sporadically" exercised her visitation rights, suggesting that the preservation of these rights may not weigh heavily in determining whether appellant's parental rights should be terminated.

Since 1986, the Minnesota Supreme Court and Legislature have recognized that the "best interests of the child" is the "paramount consideration" in termination of parental rights proceedings. Minn.Stat. §§ 260.011, subd. 2(b), 260.221, subd. 4 (1996); *In re Welfare of J.J.B.*, 390 N.W.2d 274, 279 (Minn.1986). We have held before that the best interests of the children are a two-edged sword in termination cases. The petitioner may demonstrate that the children's best interests, which are the paramount consideration in these cases, add cause for termination. *In re Welfare of M.P.*, 542 N.W.2d 71, 74 (Minn.App.1996) (citing Minn.Stat. § 260.221, subd. 4; *J.J.B.*, 390 N.W.2d at 279; *State ex. rel. Flint v. Flint*, 63 Minn. 187, 189, 65 N.W. 272, 272 (1895)). Equally important, it may be shown that considerations regarding the best interests of the children work against the decision to terminate. *Id.* at 74–75. The issues in *M.P.* prompted our discussion of numerous best interests considerations that might preclude termination, all of them representing long-held views in the appellate jurispru-

dence of Minnesota. *Id.* at 75–77. This discussion was cited in our remand order in the present case.

▇▇▇▇ As we recognized in *M.P.*, the parent may demonstrate children's bonds with either the parent or siblings that would suggest potential harm caused by a termination of parental rights. A parent may show these bonds by producing evidence of the child's choice for future care, by showing the duration and intensity of the child's past relationships, or by proving the special value of care, such as health care, that the child has enjoyed in the past. *See id.; see also State ex rel. Lund v. Anderson*, 175 Minn. 518, 519, 221 N.W. 868, 869 (1928) (preserving custodial care by non-parent who was "peculiarly well qualified" to deal with child's ongoing health problem). Especially pertinent to termination cases, evidence on the positive significance of visitation contacts the children have enjoyed during a preceding period of foster care may demonstrate that termination is not in the children's best interests. *See M.P.*, 542 N.W.2d at 75.

Commonly, as in the immediate case, evidence that the parent has failed in furnishing adequate custodial care for a child may prompt a termination proceeding. In any case where this showing occurs, evidence on the harm of termination will normally lead to the question of whether benefits of a plan of long-term foster care, preserving valuable visitation contact of the children with their parent or parents, might outweigh the benefits of termination. *See id.* at 74–75. The prospect for preserving visitation contacts greatly increases when evidence exists that the children may not be adoptable, so that termination offers nothing but long-term foster care without visitation contacts. *See id.* at 76 (deploring an order that provides the child with what might be the worst of two worlds, foster care rather than adoption, but without visitation contacts). When contemplating the alternative of long-term foster care, the court must consider the limits on that care mandated by Minn.Stat. § 260.191, subd. 3b(a)(3) (1996).[1]

---

1. It is evident that the limits stated in Minn.Stat. § 260.191, subd.3b(a)(3) may conflict with compelling evidence in a termination case that long-

term foster care serves the best interests of children. This conflict would require the courts to measure the "paramount" weight of the chil-

Appellant contends that the trial court failed to deal adequately with the best interests issue. She argues, more specifically, (a) that the children have expressed a strong wish for their mother to care for them, and (b) that the petitioner failed to show how the two children related to their older sibling, a 12 year-old sister. We conclude that the record fails to establish considerations favoring long-term foster care, which might include a showing that the children benefited by visitation rights of their mother or that there were special reasons to protect their relationship with a sibling. On the latter topic, appellant suggests that the petitioning agency should have shown that the sibling relationship was insignificant. We conclude that the agency does not have the burden to negate considerations that have not been established by the evidence in the case.

## 2. Present and future circumstances.

On remand from the first appeal, the trial court failed to respond to the remand instruction that it make a finding on the impact of the spanking incident upon its ultimate finding of neglect. This court sought additional findings to ensure that the court found neglect because appellant presently was dangerous to her children. *See Chosa,* 290 N.W.2d at 769 (requiring that evidence relating to termination address conditions existing "at the time of the hearing"). Appellant has a long record of behavior that created a danger to her children, but the record shows that the county social services and the court continued to work with appellant toward rehabilitation and family reunification. The occurrence of abuse at a time when reunification was imminent apparently dashed the trial court's hopes for any success in repeating its reunification efforts. The evidence supports the findings and the termination order because, at the time of the hearing, appellant still exhibited problems with controlling herself and, as a result, continued to pose a danger to the well-being of her children.

Appellant contends that medical evidence presented at trial established that she was rehabilitated and currently able to parent her children. This assertion lacks support in the record. Although medical witnesses noted that appellant had made progress in her recovery, their opinions regarding her care of the children were conditional and guarded. Dr. Seymour Gross did see an improvement in appellant's self-esteem but testified that the children would be safe only if she remained sober. The doctor also testified that appellant needs to work on all of her problems simultaneously in order to succeed. Similarly, Dr. Creighton McKowen testified that appellant had made progress over the years and, in her current mental state, could parent the children so long as she remained sober. But Dr. McKowen testified that the 1995 bruising incident showed that appellant did not know how to control her anger "to the point where the children are safe." Furthermore, both doctors observed that appellant still needed continued treatment on a regular basis. The trial court also had before it appellant's sporadic history of attending her various treatment and counseling programs.

When confronted with the fact that appellant thwarted the long-awaited reunification with an incident of uncontrolled anger, which the trial court found abusive, the court was unable to find that appellant had rehabilitated herself. The record permits this determination.

## 3. Statutory grounds.

Finally, appellant contends the evidence is insufficient to establish the statutory grounds for termination. The court need find only one statutory condition to support termination. *In re Welfare of R.M.M.,* 316 N.W.2d 538, 541 (Minn.1982). The trial court terminated appellant's parental rights pursuant to Minn.Stat. § 260.221, subd. 1(b)(2)

dren's best interest in a case of the kind. *See M.P.,* 542 N.W.2d at 74 (reviewing law on the children's best interests as a "paramount" con-

sideration). This conflict does not arise in this case because of our conclusion that the record

(1996).[2] Under that statute, the juvenile court may terminate a parent's rights to a child if it finds that parental duties have been "substantially, continuously, or repeatedly refused or neglected," that the parent is "physically and financially" able to meet responsibilities, and that social service agency efforts have failed to correct cited shortcomings. *Id.* The evidence relating to termination must address conditions that exist "at the time of the hearing." *Chosa,* 290 N.W.2d at 769. Termination is appropriate "only if it reasonably appears that the condition of dependency or neglect will continue for a prolonged, indeterminate period." *J.J.B.,* 390 N.W.2d at 278. The trial court must make "clear and specific findings" that conform to the statutory requirements for termination. *Chosa,* 290 N.W.2d at 769. Although this court defers to the trial court's findings, we "exercise great caution in termination proceedings." *Id.*

The record here shows that, in spite of her love for her children, appellant has failed to comply with her parental duties, basically due to her personal problems of alcoholism, drug addiction, low self-esteem, and her tendency to involve herself in abusive relationships. Appellant's circumstances repeatedly have proved detrimental to the physical, mental, and emotional welfare of the children. The record also establishes that Scott County provided at least 25 social services to assist appellant and her children in rehabilitation. The county attempted to reunify the family six times between March 1994 and June 1995.

■■■■ Despite these efforts, appellant remained concerned about her sobriety and her inability to control her anger when her children misbehaved. This record supports the trial court's determination that the county's reasonable efforts failed to correct the conditions that formed the basis for the petition. *See In re Welfare of A.H.,* 402 N.W.2d 598, 604 (Minn.App.1987) (upholding termination of parental rights where the "quantity and quality of assistance provided" established the reasonableness of county's efforts).

We note, as did the trial court, that although appellant has availed herself of some of the services the county provided for her, she remains concerned about her sobriety, a key factor in her ability to provide a stable and safe environment for her children. Up until this time, appellant has been unable to help herself enough to predict safety for the children.

## DECISION

The record permits a finding of a statutory ground for terminating appellant's parental rights toward A.J.C. and R.L.K., and the evidence shows that appellant's inability to care for the children continues. Appellant has failed to establish that long-term foster care is an alternative to termination that serves the children's best interests.

**Affirmed.**

---

does not show special cause for long-term foster care.

**2.** Appellant challenges the evidence to support all four grounds that the county had pleaded in the petition for termination. The court, however-

er, based the termination order solely on Minn. Stat. § 260.221, subd. 1(b)(2), which, if supported by the evidence, sufficiently would warrant termination. *See R.M.M.,* 316 N.W.2d at 541.