*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0196**

In the Matter of the Welfare of the Children of: K. B., Parent.

**Filed August 1, 2016
Affirmed; motion denied
Reyes, Judge**

Hennepin County District Court
File No. 27JV153543

Michael O. Freeman, Hennepin County Attorney, Kacy Wothe, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Mary Moriarty, Hennepin County Public Defender, David W. Merchant, Assistant Public Defender, Minneapolis, Minnesota (for appellant)

Eric S. Rehm, Burnsville, Minnesota (for guardian ad litem)

Considered and decided by Schellhas, Presiding Judge; Reyes, Judge; and Kalitowski, Judge.[*]

## UNPUBLISHED OPINION

**REYES**, Judge

On appeal from the district court's decision to terminate her parental rights to her three children, appellant argues that the late addition of her youngest child to the termination proceedings deprived her of substantive and procedural due process of law

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

and violated the applicable statutory and procedural rules. In addition, mother argues that insufficient evidence supports the district court's termination decision with respect to her youngest child. Furthermore, with respect to all three children, mother argues that the department failed to provide reasonable reunification efforts and that the district court erred in concluding that terminating her parental rights is in the children's best interests. Finally, after the parties filed their briefs in this matter, appellant moved to strike portions of respondent's brief. We affirm and deny the motion to strike as unnecessary.

**FACTS**

Appellant-mother K.L.B. is the birth mother of three children, K.L.J.G., K.A.B., and K.K.B. K.L.J.G. turned three years old in March of 2016, K.A.B. will be two years old in August of 2016, and K.K.B. will be one year old in October of 2016. Mother was married neither when the children were conceived nor when they were born. There is no father of record for K.L.J.G. or K.A.B. F.R.B. is the alleged father of K.K.B., but he has not taken the steps necessary to establish paternity.

In November 2014, mother called the police and reported that K.A.B. had been kidnapped by an "unknown man." During the police investigation, it was discovered that the "unknown man" was F.R.B., mother had left K.A.B. in F.R.B.'s care, and mother called the police when F.R.B. would not return K.A.B. When police responded to mother's call, they observed that mother was "very emotional and yelling." The police also had concerns about the conflict between mother and F.R.B. and about mother's homelessness. The police retrieved K.A.B. from F.R.B. and brought her to an emergency

2

shelter. Because of their concern for the children's welfare, the police referred the matter to child protection.

On November 25, 2014, the district court issued an order for protective care and out-of-home placement for K.L.J.G. and K.A.B. At a pretrial hearing on January 6, 2015, mother waived her right to a trial on the children in need of protection or services (CHIPS) petition and admitted that K.L.J.G. and K.A.B. were CHIPS. The district court adjudicated the two children CHIPS. In addition, the court approved a case plan for mother which included requirements that mother submit to random urinalysis testing, complete a substance-abuse assessment, complete a psychological evaluation and follow all recommendations of the evaluation, comply with any mental-health recommendations previously in place, participate in parenting education, and participate in domestic violence or anger-management programming.

Mother initially demonstrated some progress on her case plan and was granted unsupervised visitation. A condition of the unsupervised visitation was that mother have no contact with F.R.B. Mother violated this condition[1] and otherwise demonstrated difficulty complying with her case plan during the summer of 2015. The Hennepin County Human Services and Public Health Department (the department) filed a petition to terminate mother's parental rights on June 29, 2015. A hearing on the permanency petition was held on July 27, 2015. Mother failed to appear.

---

[1] Because she violated the court's order, mother's parenting time reverted to supervised.

3

In October 2015, K.K.B. was born.  The department filed an amended termination petition later that month, which included K.K.B., and an emergency protective-care hearing was held thereafter.  Over mother's objection, the district court allowed the department to amend the termination petition and ordered protective care and out-of-home placement for K.K.B.

At mother's subsequent permanency trial, three witnesses testified: the child protection social worker, mother, and the guardian ad litem (GAL).  On December 15, 2015, the district court filed an order terminating mother's parental rights to all three children.  Mother moved for a new trial.  The department opposed this motion.  The court denied mother's motion for a new trial.  Mother appeals.

## D E C I S I O N

Whether to terminate parental rights is "discretionary with the district court."  *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 136-37 (Minn. 2014).  While a reviewing court conducts a close inquiry into the evidence, it also gives "considerable deference" to the district court's termination decision.  *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008).  The reviewing court will affirm the termination of parental rights if "at least one statutory ground for termination is supported by clear and convincing evidence and termination is in the child's best interests."  *In re Welfare of Children of R.W.*, 678 N.W.2d 49, 55 (Minn. 2004); Minn. Stat. § 260C.301, subd. 1(b) (2014).  The "best interests of the child" are the "paramount consideration" in a termination-of-parental-rights proceeding.  Minn. Stat. § 260C.301, subd. 7 (2014).

4

**I.      Amended termination petition**

Mother argues that the district court erroneously allowed the department to amend the termination petition to include her newborn child, K.K.B., just weeks before trial. Mother alleges that, as a result of the late addition of K.K.B. to the termination proceedings, she was denied procedural and substantive due process, and that her rights under the applicable statutes and procedural rules were violated.

Whether a parent's due-process rights have been violated in a TPR proceeding is a question of law, which we review de novo. *In re Child of P.T.*, 657 N.W.2d 577, 583 (Minn. App. 2003), *review denied* (Minn. Apr. 15, 2003). The parent-child relationship is among the fundamental rights protected by the constitutional guarantees of due process. *In re Welfare of Children of B.J.B.*, 747 N.W.2d 605, 608 (Minn. App. 2008). "Although the amount of process due in a particular case varies with the unique circumstances of that case, prejudice as a result of the alleged violation is an essential component of the due process analysis." *In re Welfare of Child of B.J.-M.*, 744 N.W.2d 669, 673 (Minn. 2008) (citations omitted). Furthermore, the best interests of the child including a child's right to be raised in a secure home are paramount. Minn. Stat. § 260C.301, subd. 7.

Mother cannot establish prejudice resulting from the department's amendment of the termination petition. The record shows that the questions about mother's parenting with respect to K.L.J.G. and K.A.B. were also present with respect to K.K.B. The record also shows that the arguments mother made regarding K.L.J.G. and K.A.B. applied to K.K.B., and that no circumstances involving K.K.B. would have justified a different case

5

plan or court-ordered services for K.K.B. Thus, mother was not prejudiced by the district court's decision to allow the county to amend the termination petition. Further, mother provides no indication as to how allowing her additional time for rehabilitation and delaying permanency for K.K.B. is in K.K.B.'s best interests. Therefore, on the unique facts of this case, we conclude that the district court's decision to allow the county to amend the termination petition did not result in the denial of mother's due-process rights, or in the denial of her rights under the applicable statutes or procedural rules.

## II. Determination of palpable unfitness to parent K.K.B.

Mother argues that insufficient evidence supports the district court's decision to terminate her parental rights to K.K.B as being palpably unfit to parent K.K.B., pursuant to Minn. Stat. § 260C.301, subd. 1(b)(4). In particular, mother contends that because K.K.B. was only a newborn there was no evidence of a "consistent pattern of specific conduct before the child" and no "specific conditions directly relating to the parent and child relationship." We are not persuaded.

Minn. Stat. § 260C.301, subd. 1(b)(4), provides, in relevant part:

> [A] parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child.

*Id.* "Determining whether any particular statutory basis for involuntarily terminating parental rights is present requires the district court to make findings on multiple statutory

6

factors, and to decide whether its findings on those factors show the statutory basis for termination to be present." *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 899 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012). We review the district court's decision regarding whether a statutory basis for terminating parental rights is present for an abuse of discretion. *Id.* at 661. A district court abuses its discretion if its underlying findings of fact are clearly erroneous, if it misapplies the law, or if it resolves the matter in a manner that is against logic and the facts on record. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997); *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984). "A finding is clearly erroneous if it is either manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *J.R.B.*, 805 N.W.2d at 660–61 (quotation omitted).

The district court, in its thorough and well-reasoned order, concluded that mother is palpably unfit based in large part on the following findings: mother has a serious and persistent mental-health diagnosis that she has not addressed and the effects of which harm the children; "[mother] is overwhelmed during parenting sessions but unreceptive to assistance to address how to improve" her parenting skills; and "mother remains in an abusive relationship" that negatively impacts her ability to parent and she "continues to deny that this is an issue." Furthermore, the district court found that K.K.B. "is similarly situated to her siblings, if not more vulnerable, and the same issues that have prevented . . . mother from providing care for her older siblings for a significant period of

7

time apply to . . . mother's ability to provide K.K.B. with adequate care." These findings are supported by substantial evidence in the record and are not clearly erroneous.[2]

The social worker testified that mother missed several of their scheduled appointments; failed to engage in services offered to her though Community Outreach for Psychiatric Emergencies; missed an appointment for a mental-health assessment, accidentally went to the wrong provider to make up the missed appointment, and did not consistently return to that provider as planned, which resulted in the failure to obtain the comprehensive testing requested by the department; failed to engage in the recommended cognitive-behavioral therapy to help with her depression and anger management;[3] and failed to engage with an adult rehabilitative mental-health-services worker.

Because of her poor attendance at parenting-education programming, mother was assigned in-home parent services. Mother first received services through Reach for Resources but was subsequently discharged from the program due to a lack of participation. Mother was then referred to and began receiving services through Families in Transition Services (FiTS). Records from these visits show that mother did not actively engage with the parenting educator to improve her parenting skills.

---

[2] Notably, mother does not dispute the district court's findings as to K.L.J.G. and K.A.B. *See P.T.*, 657 N.W.2d at 588 (Minn. App. 2003) ("Generally speaking, the best evidence of how a parent will treat one child is how a parent has treated other children.").

[3] Mother testified that she was seeing a therapist but acknowledged that her therapist was not the mental-health professional that the social worker recommended. Further, mother testified that her therapist recommended meeting approximately once every two weeks. The social worker, on the other hand, recommended that mother attend therapy weekly.

Finally, at the time of trial, mother did not demonstrate an appreciation for how her relationship with F.R.B. could negatively affect her children. Specifically, mother's testimony reflects the fact that she believed F.R.B. is an appropriate person to be around her children and that she wants to co-parent with him. *See In re Welfare of D.L.R.D.*, 656 N.W.2d 247, 251-52 (Minn. App. 2003) (rejecting parent's argument that passivity in interacting with agency failed to support finding that termination of parental rights was in child's best interests when findings showed parent's conduct included continuing problems improving her parenting skills, mental health and drug abuse, and other substantial personal issues); *Matter of Welfare of A.J.C.*, 556 N.W.2d 616, 622 (Minn. App. 1996) (affirming termination of parental rights where "in spite of [mother's] love for her children, [she] has failed to comply with her parental duties, basically due to her personal problems of alcoholism, drug addiction, low self-esteem, and her tendency to involve herself in abusive relationships").

In sum, we conclude that the district court did not abuse its discretion in concluding that mother is palpably unfit to parent K.K.B.

### III. Reasonable efforts

Mother next argues that the county did not engage in reasonable efforts to reunify her with her children. We disagree.

In every termination-of-parental-rights proceeding, the district court must make specific findings that the county made reasonable efforts to rehabilitate the parent and reunite the family. Minn. Stat. § 260C.301, subd. 8 (2014); *see also* Minn. Stat. § 260.012(a) (2014) (requiring reasonable reunification efforts in child-protection cases,

9

absent certain exceptions not at issue here). "Reasonable efforts at rehabilitation are services that go beyond mere matters of form so as to include real, genuine assistance." *In re Welfare of Children of S.W.*, 727 N.W.2d 144, 150 (Minn. App. 2007) (quotation omitted), *review denied* (Minn. Mar. 28, 2007). But reasonable efforts do not require extraordinary or exhaustive efforts. *See In re Welfare of S.Z.*, 547 N.W.2d 886, 892-93 (Minn. 1996) (stating that "reasonable efforts" did not require services that were unlikely to "bring about lasting parental adjustment enabling the placement of [the child] with [the parent] within a reasonable period of time"). We review a district court's factual findings regarding whether the county made reasonable efforts for clear error. *J.R.B.*, 805 N.W.2d at 901.

The district court found that the department made reasonable efforts towards reunifying the children with mother. The district court noted the various services that were offered to mother, which include: targeted case-management service; random urinalysis; chemical-dependency assessment; domestic violence programming; referral for psychological-, mental-, or behavioral-health services; referral for psychiatric services and medication management; housing assistance; parenting education; in-home parenting services; child services and evaluations; foster care services; public-health nurse; voluntary services to significant other; paternity; adult rehabilitative mental-health services, mother-baby day-treatment program; transportation assistance; child protection and child services case-management services; supervised and unsupervised visitation; and kinship-search services.

The testimony and evidence presented at trial support the district court's findings. Evidence in the record confirms that mother received all of the above-listed services. Both the social worker and the GAL confirmed that the services provided were appropriate, and that although mother made an effort to comply with her case plan, she failed to do so. Furthermore, the record shows that, at the time of trial, mother was still having difficulty understanding why it was important that she participate in domestic-violence-prevention training, engage in mental-health services, and maintain sobriety.

Mother further argues that the department should have helped her pursue dialectical behavioral therapy (DBT). In support of her argument, mother notes the social worker's testimony that mother's stabilization of her mental health would have increased the likelihood that the social worker would recommend reunification in the future. Furthermore, mother highlights the social worker's recommendation that mother participate in DBT, and mother contends that this therapy "could have made all the difference." But mother mischaracterizes the record. The social worker did testify that her concerns would have been greatly alleviated if mother had aggressively treated her mental-health conditions. But the social worker also testified that DBT programing is very intensive and that mother did not engage in the regular weekly mental-health therapy that would have led to the referral for DBT services. Therefore, mother's own inaction prevented her from obtaining DBT.

In conclusion, the district court's finding that the county made reasonable efforts to reunify mother with her children is supported by clear and convincing evidence.

11

## IV.    Best interests

Finally, mother argues that terminating her parental rights was not in the children's best interests.  We are not persuaded.

"An appellate court may affirm a termination of parental rights if at least one statutory basis for termination is present and termination is in the children's best interests."  *J.R.B.*, 805 N.W.2d at 906.  The child's best interests are the paramount consideration in a termination proceeding.  Minn. Stat. §§ 260C.001, subd. 2(a), .301, subd. 7 (2014).  In analyzing the child's best interests, "the court must balance three factors: (1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interest of the child."  *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992).  "Competing interests include such things as a stable environment, health considerations and the child's preferences."  *Id.*  "We review a district court's ultimate determination that termination is in a child's best interest for an abuse of discretion."  *J.R.B.*, 805 N.W.2d at 905.

Here, the district court made extensive findings regarding mother's conduct and concluded that the applicable factors weigh in favor of terminating mother's parental rights.  In its best-interests findings, the district court noted that mother did not demonstrate an ability to adequately address the issues negatively impacting her parenting.  The district court noted mother's failure to follow through with appointments to address her mental health, her lack of engagement with parenting education, and her relationship with F.R.B.  As previously discussed, these findings are well-supported by

12

the record and are not clearly erroneous. In particular, these findings illustrate mother's inability to provide the children with a stable environment. While we recognize the significance to mother of preserving her relationship with the children, the other two applicable best-interests factors weigh in favor of terminating mother's parental rights. "In weighing the competing interests of a parent and her children, a mother's love and desire to care for her children does not outweigh her children's needs for basic care . . . ." *In re Welfare of Children of K.S.F.*, 823 N.W.2d 656, 668 (Minn. App. 2012). Therefore, we conclude that the district court's determination that terminating mother's parental rights was in the children's best interests was not an abuse of discretion.

## V. Motion to strike

On May 19, 2016, mother filed a motion to strike portions of the department's brief. Mother contends that the department discusses facts, the foundation for which are contained in an exhibit that was not admitted into evidence at mother's trial. Minn. R. Civ. App. P. 110.01 provides, "The documents filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases." Because it appears that the disputed evidence may have been erroneously admitted, and because there is ample other evidence in the record to support our decision, we have not considered or relied on the disputed material. As such, we deny mother's motion to strike as unnecessary. *See Drewitz v. Motorwerks, Inc.*, 728 N.W.2d 231, 233 n.2 (Minn. 2007) (denying motion to strike as unnecessary when court did not rely on challenged materials).

**Affirmed; motion denied.**