**In re S.B., Juvenile**

[800 A.2d 476]

No. 01-542

May 2, 2002. S.B., a sixteen-year-old juvenile, and her mother appeal the family court's order terminating mother's residual parental rights with respect to S.B. We affirm.

S.B. was born on August 1, 1985. Her half-sister, A.B., was born on April 3, 1992. Mother moved with her daughters from North Carolina to Vermont in 1998 to reestablish a relationship with an old boyfriend. Within a few months, the Department of Social and Rehabilitation Services (SRS) began providing services to the family to address issues concerning neglect and abuse. In 1999, S.B. was sexually molested by mother's new husband. This was at least the second time that S.B. had been sexually abused while under mother's care. Later that year, SRS substantiated that S.B. had sexually abused A.B. In June 1999, S.B. and A.B. were found to be children in need of care or supervision (CHINS). The parties stipulated to a plan of services with a goal of reunification, and the family court incorporated the plan into a one-year protective supervision order. The girls were placed with the mother over SRS's objection.

Mother left Vermont and returned to North Carolina in August 1999, in violation of the protective order. SRS enlisted the help of North Carolina police to locate the children. Authorities found the children living in a trailer behind a bar with friends of mother, who was in jail. S.B. had been suspended from school for striking a teacher, and both girls were infected with lice. SRS brought the children back to Vermont in February 2000 and sought approval for their placement in North Carolina, but the North Carolina social services agency denied the request in August 2000, citing, among other things, mother's untruthfulness regarding her participation in services. After the denial of the North Carolina placement, mother refused to return to Vermont to participate in services and work on a reunification plan. In September 2000, SRS changed its case plan goal from reunification to termination of parental rights. The termination hearing was held in August 2001.

S.B. experienced difficulty in foster care after returning to Vermont in February 2000. The sexual abuse she had suffered and her mother's lifestyle had left her with a number of emotional and behavioral problems that were resistant to treatment. She spent varying amounts of time at a residential treatment facility for girls. Shortly before the termination hearing, S.B. ran away from her foster home, and was again placed at the residential treatment center. At the time the termination hearing was held, S.B. took no position as to whether mother's rights should be terminated. She indicated to her attorney and guardian ad litem that she would let the family court decide what should happen to her. After the hearing, but before the family court rendered its decision, S.B. met with her mother. Following the meeting, she notified the court that she opposed the termination of mother's parental rights, and that she would not consent to being adopted by her foster parents. In a letter addressed to her attorney and the court, she stated that her mother had changed, and that she wanted to go home to her.

Mother also filed a motion to reopen the proceedings to allow S.B. to testify.

In its November 21, 2001 decision, the court denied mother's request to reopen the proceedings to allow S.B. to testify, noting that S.B.'s guardian had been opposed to S.B. testifying during the hearing, and that the potential emotional toll on S.B. greatly outweighed the value of testimony that was subject to extreme internal and external pressures. The court indicated, however, that it would consider S.B.'s request in examining the statutory "best interest" factors set forth in 33 V.S.A. § 5540. While recognizing that a girl of S.B.'s age would want to remain with her mother, the court found it telling that after one visit with mother — the first in over eighteen months — S.B. believed that mother had changed, albeit at her own pace rather than in response to SRS's expectations. After examining the statutory factors, the court concluded that stagnation had occurred, and that the child's best interests warranted terminating mother's parental rights.

S.B. appeals the family court's order, and mother joins in her appeal without filing a separate brief. No party is challenging the termination of mother's parental rights with respect to A.B. S.B. argues that the family court issued a purposeless termination order as the result of its failure to give due consideration to her desire to remain with her mother. She complains that, without seeing her or receiving any evaluations of the psychological impact of termination on her, the court dismissed her preference against termination without giving it due consideration, notwithstanding that she was sixteen years old and capable of knowing her own mind. S.B. points out that, under Vermont law, she cannot be adopted without her consent, see 15A V.S.A. § 2-401(c) (unless court dispenses with minor's consent, petition to adopt minor fourteen years of age or older may be granted only if, among other things, minor has consented to adoption), and thus the chances of the termination order leading to her being adopted are slim at best. She contends that the court's termination order condemns her to a world of legal limbo, which neither provides permanency nor allows her contact with her mother. In her view, the order has no purpose and is likely to be counterproductive.

In considering these arguments, we first note that this is not a custody case in which the family court is weighing which parent or guardian will be best able to serve the needs of the child; rather, this is a legislatively created termination proceeding in which the court is required to weigh specified statutory factors when determining whether to grant a petition for termination of residual parental rights. See 33 V.S.A. § 5540; see also *In re B.L.L.*, 787 A.2d 1007, 1012-14 (Pa. Super. Ct. 2001) (comparing significance of child's preference in custody and termination proceedings). Unlike statutes in some states, § 5540 does not specify whether the family court must consider the preferences of older children. Cf. Cal. Welf. & Inst. Code § 366.26(c)(1)(B) (certain circumstances constitute sufficient basis for termination of parental rights unless court finds compelling reason for determining that termination would be detrimental to child for specified reasons, including that child twelve years of age or older objects to termination); Iowa Code § 232.116(3)(b) (court need not terminate parental rights if child is over ten years of age and objects to termination); Me. Rev. Stat. Ann. tit. 22, § 4055(3) (court "shall consider, but is not bound by, the wishes of a child 12 years of age or older in making an order" in termination proceeding); Ohio Rev. Code Ann. § 2151.41.4(D)(2) (in determining best interest of child at termination hearing, court shall consider all relevant factors, including, but not limited to, child's wishes, giving due regard to child's maturity); Va. Code Ann. § 16.1-283(G) (re-

sidual parental rights shall not be terminated if child, fourteen years of age or older or otherwise of age of discretion, objects to such termination).

We conclude that the family court may consider an older child's preference when it examines the first and fourth factors set forth in § 5540, which pertain to the child's relationship with her natural and foster parents and the type of role that the natural parents have played in the child's life. As we have stated on numerous occasions, however, the most important of the statutory factors is the third one — whether the parents will be able to resume their parental duties within a reasonable period of time. See *In re B.M.*, 165 Vt. 331, 336, 682 A.2d 477, 480 (1996). Undoubtedly, as the statutes cited above suggest, there are those who believe that the preference of an older child should be a significant consideration in termination proceedings. But our Legislature has not emphasized that factor among the stated statutory criteria, and thus we decline to give it inordinate weight, particularly . because its significance is an issue better resolved through the legislative process. See generally W. Mlyniec, *A Judge's Ethical Dilemma: Assessing a Child's Capacity to Choose*, 64 Fordham L. Rev. 1873 (1996) (discussing child development theory and children's decision-making capacity, and recommending process for reaching ethical decisions concerning children's preferences in court proceedings pertaining to custody, adoption, abortion, medical treatment, and delinquency).

Our role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating mother's parental rights with respect to S.B., notwithstanding S.B.'s stated opposition to termination. See *In re A.W.*, 167 Vt. 601, 603, 708 A.2d 910, 913 (1998) (mem.) (family court's termination order resulting from modification proceeding will be upheld if clear and convincing evidence supports findings, which, in turn, support conclusions); *In re R.F.*, 135 Vt. 275, 276, 376 A.2d 38, 40 (1977) (family court's decision in modification proceeding will not be set aside absent showing that court's discretion was exercised on grounds clearly untenable or to extent clearly unreasonable). The court's unchallenged findings demonstrate that (1) mother substantially neglected the girls over the years, thereby exposing them to physical and sexual abuse and resulting in significant harm to their emotional and psychological well-being; (2) mother has consistently resisted participating in services aimed at addressing family problems and repairing the relationships between family members; (3) mother has demonstrated no insight into the negative impact she has had on her children; and (4) since the children were returned to Vermont in February 2000, mother has visited them only once and spoken to them by telephone only inconsistently, despite having the time and resources to visit and communicate with them on a more regular basis. Based on these and other findings, the court concluded that mother has never played, at least for any substantial period of time, a constructive role in the children's lives.

The court carefully weighed each of the statutory best-interest factors, keeping in mind S.B.'s stated desires, and ultimately concluded that termination of mother's parental rights was in S.B.'s best interests. The court acknowledged the understandable turmoil S.B. was experiencing, but noted that S.B. was asking to go home with her mother. — clearly not a possibility in the near future — based on the belief, reached after one meeting with mother, that mother had changed. S.B. cannot point to any evidence presented at the termination hearing, however, demonstrating that mother had in fact changed or made any progress toward reunification. Upon review of the record, we conclude that the court

acted within its discretion in terminating mother's parental rights with respect to S.B., notwithstanding S.B.'s stated opposition to termination and her desire to reunite with her mother. Cf. *Cameron v. Cameron*, 137 Vt. 12, 14, 398 A.2d 294, 295 (1979) (children's preferences must yield to paramount consideration of their well-being); *In re Frederick P.*, 779 A.2d 957, 962 (Me. 2001) (after considering older children's doubts as to termination of their mother's parental rights, trial court acted within its discretion in determining that termination would be in children's best interest because of adverse effect mother would have on children in light of her manipulative nature and self-centered focus).

The situation here is unlike that in *In re M.P.*, 542 N.W.2d 71 (Minn. Ct. App. 1996), a case relied upon by S.B. There, the court reversed and remanded a termination order because "the trial court did not make even conclusory findings tying the termination decision with the children's best interests," and, more specifically, failed to indicate how it factored into its termination decision the stated desire of the 15-year-old juvenile that her mother's parental rights not be terminated. *Id.* at 75. The court concluded that, without findings, it was unable to review the juvenile's claim that the trial court failed to give her preference sufficient weight. *Id.* A year later, in another case, the same court rejected a similar argument, stating that, unlike the trial court in *M.P.*, the trial court in that case considered, but rejected, the juvenile's preference against termination. *In re D.J.N.*, 568 N.W.2d 170, 177 (Minn. Ct. App. 1997) (trial court's findings, including finding that termination order would allow juvenile to enjoy remaining four years of his childhood without acting as surrogate parent, demonstrated that court examined juvenile's best interests while considering his stated preference against termination). As in *D.J.N.*, the

family court here considered, but ultimately rejected, S.B.'s stated preference.

As for S.B.'s claim that the termination order serves no purpose, the family court expressed its belief that its order concluding the termination proceedings would allow S.B. to get beyond the turmoil she had been experiencing and to refocus on school and her community. S.B. contends the termination order will not free her for adoption because she can refuse to be adopted. That may be so, but S.B.'s feelings about adoption may change with time. In any event, we have repeatedly stated "that a valid termination of parental rights does not depend on the availability of permanent foster care or adoption." *In re D.M.*, 162 Vt. 33, 40, 641 A.2d 774, 778 (1994); see *In re E.B.*, 158 Vt. 8, 15, 603 A.2d 373, 377 (1992) (termination of residual parental rights does not depend on alternative placement).

*Affirmed.*