*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-009

APRIL TERM, 2016

| | |
|---|---|
| In re J.M., A.M., E.M. & G.M., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Windham Unit, |
| | } Family Division |
| | } |
| | } DOCKET NOS. 78/79/80/81-8-14 Wmjv |
| | |
| | Trial Judge: Karen R. Carroll |

In the above-entitled cause, the Clerk will enter:

Mother and father separately appeal the trial court's order terminating their parental rights to their four children, J.M., A.M., E.M., and G.M., born in 2000, 2002, 2005, and 2007, respectively. On appeal, father argues that the court failed to individually assess the role father plays in each child's life. Mother argues that the court's order infringed upon her right to free exercise of religion. We affirm.

The court found the following by clear and convincing evidence. The children were born during the parent's marriage. In early 2013, Mother and father divorced in North Carolina. Father moved to South Carolina and the children moved to Vermont with mother. The children were placed in the custody of the Department for Children and Families (DCF) in July 2014 after they were found living in a home with mother that was "trashed"—human feces and urine were found throughout the home and the children were urinating in the bathtub because the plumbing was not working. Mother stipulated that the children were in need of care or supervision (CHINS) in September 2014.

DCF had concerns about mother's mental health, and sought an evaluation. Mother was subsequently diagnosed with schizophrenia. Some symptoms of mother's illness are that she lacks interest in normal social relations, exhibits intense anger, and has emotional upheaval and abnormalities in sensory processing. She was not employed, lacked income, and refused financial services. Following a contested disposition hearing, the court adopted DCF's case plan, which had a joint goal of reunification and adoption. The court specifically ordered mother to complete a mental-health assessment and to follow recommended treatment. The order informed mother not to rely on unlicensed or pastoral counselors as a substitute for appropriate mental health treatment, and required her to seek a licensed, qualified mental health professional for mental health screening, assessment, and any follow-up mental health care. Mother does not believe that she has a mental illness. She has refused medication and treatment, and she has not obtained an assessment or engaged in mental health treatment. Mother has strong spiritual beliefs and maintains she has not engaged in therapy because she is required by her religion to have counseling with a Messianic counselor, but cannot locate one in her community. Mother believes she can earn a living through preaching. Mother has separate visits with her daughters, A.M. and G.M., and her sons, J.M. and E.M., and has attended visits regularly. Mother has

difficulty, however, in staying focused on the needs of the children, talks about personal issues and adult problems, and makes random outbursts. On one occasion, mother's visit with her sons was canceled after she screamed loudly at the family time coach in the parking lot and would not calm down.

Father was located in South Carolina[*] after the children were taken into DCF custody. DCF included father in the case plan and offered father telephone and email contact with the children. He sent emails twice. DCF requested an Interstate Compact for the Placement of Children (ICPC) to determine if the children could be placed with him. Father did not initially return calls from officials in South Carolina to complete the ICPC, and then indicated that he first needed to obtain appropriate housing and make his life stable. In April 2015, DCF financed father's trip to Vermont to visit with the children and be evaluated. Father communicated with the boys, J.M. and E.M., by telephone, but the girls, A.M. and G.M., refused. In October 2015, the court directed father to appear in person at the December termination proceeding. Father did not appear, and the hearing was conducted in his absence.

When the children were taken into custody, they had self-esteem and behavior issues and were not happy. The children have all improved in their foster homes; they are doing better in school and are involved in activities. J.M. and E.M. are in a long-term foster home. J.M. has mental and education needs, and has been diagnosed with ADHD. He was very angry when he was taken into custody and was verbally abusive. He is now better able to express his thoughts and his feelings. He requires continued psychiatric care and medication, close monitoring in a structured home, and consistency from adults who can address his issues and behaviors in a positive way. He is still behind in school, but is improving. E.M. has significant learning disabilities and is challenging to manage. E.M. was behind in school, but has caught up. A.M. and G.M. have been placed with their maternal grandparents, who wish to adopt them. A.M. had a high level of emotional distress. G.M. was overactive, but her behaviors have improved. A.M. is ambivalent about speaking to her father and G.M. refuses to do so. All of the children desire adult attention and are in need of routine and consistency.

Based on the evidence, the court found there was a change of circumstances due to stagnation. The court found mother had not met goals of the caseplan. She has refused to obtain a mental health assessment and treatment. The court also found that her financial situation had not improved in that she had no employment or income and had refused to apply for public assistance. The court concluded that mother's ability to parent had not improved. The court also concluded that father had not demonstrated "any progress in his case plan or any ability to take care of his children at the present time." He did not see his children for several years, and, while he had some limited phone contact with his sons, had not made a true attempt to reunify with them.

The court concluded that termination was in the children's best interests. The children lack a positive relationship with father. Father has not played a constructive role in the children's lives and has not offered himself as a permanent parent to them. Mother's mental illness has interfered with her relationship with her children. Mother does not play a constructive role in the children's lives. She is unable to put their needs ahead of her own and is unable to provide the structure and support they need. Neither parent will be able to resume parenting within a reasonable period of time. The parents separately appeal the termination order.

---

[*] Although the trial court's order states that father was living in North Carolina, it is clear from the transcript that father lived in South Carolina.

To terminate parental rights, the court must first find there has been a substantial change in material circumstances and second that termination is in the children's best interests. In re B.W., 162 Vt. 287, 291 (1994). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639, (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and will affirm the findings unless clearly erroneous. Id.

On appeal, father argues that the court erred by not individually assessing his relationship with each child and the constructiveness of the role he plays in each child's life. In particular, father claims that the court failed to recognize certain evidence, which he believes demonstrates the importance to J.M., and to a lesser-degree E.M., of father's telephone contact. To the extent there was evidence upon which the court could have found father played a more positive role in the children's lives, this is a matter for the trial court to assess in determining the weight to be given evidence. See In re S.B., 174 Vt. 427, 429 (2002). It is not this Court's role "to second-guess the family court or to reweigh the evidence." Id.

The court's findings on the children's relationship with father were complete and sufficiently individualized. Some of the findings pertained to all of the children. Other than the visit in April 2015, father had not seen the children for three years. When the opportunity was offered, father sent only two emails. Father did not make progress towards reunification; he requested that an ICPC not be performed and did not offer himself as a placement. Father did not appear at the final hearing. The court recognized that father's relationship with each child was different. The court noted the telephone contact father had with his two sons, but explained the calls have been sporadic. In contrast, the court noted that G.M. refuses to speak to father and A.M. is ambivalent. These findings support the court's conclusion that termination was in the children's best interest because father remains unable to care for the children, has played almost no role in their lives for several years, and will be unable to parent them within a reasonable period of time.

Next, we turn to mother's appeal. Mother argues that in terminating her parental rights the court violated her First Amendment right to feely exercise her religion by requiring that she seek counseling and treatment from a person outside of her faith. Mother failed to raise this argument in the trial court and has therefore not preserved it for appeal. In re C.H., 170 Vt. 603, 604 (2000) (mem.) (stating that argument not raised below is not preserved for appeal); In re D.C., 157 Vt. 659, 660 (1991) (mem.) (explaining that even constitutional arguments must be preserved by presenting "issue with specificity and clarity in a manner which gives the court a fair opportunity to rule on it").

Mother contends that this Court should nonetheless address her argument because it is an "exceptional case[]." In re D.C., 157 Vt. at 660 (citing Varnum v. Varnum, 155 Vt. 376, 382 (1990)). Mother fails to demonstrate that this case is, in fact, exceptional, and that here "there has been a fundamental miscarriage of justice that we cannot overlook." Varnum, 155 Vt. at 383.

Mother has not demonstrated that the caseplan's requirement to get a mental-health assessment and to abide by any recommendations infringed on her religious beliefs. Because mother did not raise this issue below there is no record to demonstrate the contours of mother's religious beliefs and how obtaining this assessment would infringe on those beliefs. Moreover, although the court specified that counseling had to be with a qualified mental-health professional, the court did not preclude mother from engaging in counseling with a qualified

person who concurred in her religious beliefs. Furthermore, even if such infringement were shown, any impact on her beliefs did not result in a miscarriage of justice. While a parent has a right to the free exercise of religion, at times society's interest in protecting and nurturing children "must override the freedom of the parent to engage in religious practices." Id. at 384.

Here, the court specifically found that mother's mental illness had impacted her ability to parent and placed her children at risk. Therefore, the mental-health requirement was directly linked to the protection and needs of the children. Further, the court did not terminate mother's rights because of her beliefs. The court found a change of circumstances based on mother's lack of progress in addressing the issues that resulted in the children being taken into custody. What is more, its analysis of the children's best interests did not depend on the fact that mother did not obtain the assessment, but on the fact that mother remained unable to care for the children and would not be able to do so in a reasonable period of time. See id. at 385 (rejecting mother's argument that miscarriage of justice occurred where court's consideration of her religious beliefs was secondary to other concerns about mother's parenting abilities). Therefore, there are no grounds for reversal.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

4