*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

<u>**ENTRY ORDER**</u>

SUPREME COURT DOCKET NO. 2016-083

JULY TERM, 2016

In re J.M. and J.M., Juveniles          }          APPEALED FROM:
                                        }
                                        }          Superior Court, Caledonia Unit,
                                        }          Family Division
                                        }
                                        }          DOCKET NOS. 18/19-3-11 Cajv

                                        Trial Judge: Robert R. Bent

In the above-entitled cause, the Clerk will enter:

Mother appeals from the trial court's order terminating her residual parental rights in J.M. and J.M. Mother argues that the court erred in terminating her rights because continued parent-child contact was in the children's best interests. We affirm.

J.M. was born in May 2004, and his sister, also J.M., was born in June 2005. The children came into the custody of the Department for Children and Families (DCF) in March 2011 due to corroborated reports of parents' ongoing substance abuse, domestic violence, father's frequent and repeated incarcerations, unstable housing, and other issues. Parents stipulated that the children were in need of care or supervision. The children were placed with their paternal grandparents, where, with a brief exception, they have remained.

The court denied DCF's first petition to terminate parents' rights in 2012. At that time, the court concluded that even though parents could not resume parenting and the children were in a stable setting with grandparents, the State had not established by clear and convincing evidence that it was in the children's best interests to sever the parent-child relationships. The court subsequently approved an amended case plan, which changed the permanency goal to another planned permanent living arrangement, subject to the results of a contested hearing regarding the terms of parent-child contact (PCC). Following additional hearings and interim orders, the court issued a PCC order in January 2014. The order required, among other things, that to be eligible for ongoing contact, mother must remain substance free and must maintain consistency in attending visits with the children. The order provided for PCC of one supervised visit every other week and one phone call every week. In April 2015, DCF again moved to terminate parents' rights. Father voluntarily relinquished his rights. Following a hearing, the court terminated mother's rights.

The court found that mother missed multiple visits with the children, and her supervised visitation at a supervised contact center was discontinued after May 2015 as a result. DCF authorized visits for mother to be supervised by relatives but mother had inconsistent PCC through the summer of 2015, and she had no contact with the children during August and September 2015. In September 2015, the court outlined expectations for reestablishing contact. Mother reestablished contact in mid-October 2015 and had been consistent in visiting the

children from that date through the date of the second TPR hearing in mid-December 2015. During these visits, however, mother could not parent both children at once and her inability to mediate between the children increased the amount of sibling tension. Mother could not prioritize the children's needs above her own or work with her daughter when her daughter became upset. Mother also failed to remain completely sober, and it was not clear that she had gained any insight through counseling into her children's current functioning. Additionally, the court found that the increase in mother's personal stability had not yielded any increase in her capacity to parent the children.

The children had neurodevelopmental trauma and functioned at or near the pathological range. Their baseline stress levels were higher than in other children, and they also demonstrated over-reactivity. Grandparents provided children with much-needed stability, and the children had shown improvement in their care. The court found that continuing the scheduled contact with mother—i.e., continuing the children in a higher state of emotional arousal than is healthy—placed the children at risk of harm by slowing their rehabilitation in grandparents' care.

Based on these and other findings, the court concluded that there had been a substantial change in material circumstances since the prior TPR hearing in January 2014, namely the deterioration in the quality of mother-child visits and mother's failure to improve her parenting skills. It found that mother played a decreasingly relevant and even harmful role in the children's lives. After considering the statutory best-interest factors, the court concluded that termination of mother's parental rights was in the children's best interests. In so concluding, the court was mindful of the developmental trauma suffered by the children and the instability and chaotic environment that gave rise to the children's psychological stress. The court found, among other things, that the children did not look to mother for any emotional support or to supply any needs, and that there was no significant contact between mother and the children. Mother did not play a meaningful role in the children's lives, and she could not resume or assume parental duties within a reasonable period of time. Mother appeals.

Mother asserts that the sole question to be decided here was whether it was in the children's best interests to foreclose the possibility of future mother-child contact. She maintains that her failure to improve her parenting skills and her inability to parent the children within a reasonable period of time are not relevant. According to mother, continued PCC was in the children's best interests, and that the court should have crafted a disposition alternative that preserved such contact.

We find these arguments without merit. The trial court was required to consider, first, if there had been a change in circumstances sufficient to warrant modifying the existing order. See 32 V.S.A. § 5113(b) (providing that court may modify existing order on grounds that change of circumstances requires such action to serve child's best interests). Having found a change in circumstances, the sole question before the court was whether, considering the statutory best-interest factors, termination of mother's rights was in the children's best interests. Id. § 5114 (providing that any time TPR petition is filed, trial court must consider best interests of child in accordance with factors set forth by statute). Mother's failure to improve her parenting skills and her inability to parent the children within a reasonable period of time were plainly relevant factors. See id. § 5114(a)(1)-(4) (setting forth statutory best-interest factors, including child's relationship with parent, whether parent plays constructive role in child's life, and likelihood that parent will be able to resume or assume parental duties within reasonable period of time).

2

While mother argues that continued PCC was in the children's best interests, the court concluded otherwise. Its decision is supported by its findings, which in turn are supported by the evidence. See In re G.S., 153 Vt. 651, 652 (1990) (mem.) (explaining that as long as trial court applied proper standard, this Court will not disturb its findings on appeal unless they are clearly erroneous, and will affirm its conclusions if supported by findings); see also In re S.B., 174 Vt. 427, 429 (2002) (mem.) ("Our role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating mother's parental rights"). As the court explained, mother was not consistent in establishing PCC over time. While she had been consistent in the two months prior to the TPR hearing, during visits she could not prioritize the children's needs, she was unable to appropriately address the children's emotional responses or to mediate between the two children, and she tended to exhibit emotional dysregulation, which prevented the children from having more positive interactions with her. The court determined that mother played a decreasingly relevant and even harmful role in the children's lives.

Certainly, given its findings, the court was not required to create a disposition alternative that continued parent-child contact, as mother suggests. As we explained in In re S.B., a termination proceeding "is not a custody case" in which the family court must balance the respective advantages of different placement options, but rather "a legislatively created . . . proceeding in which the court is required to weigh specified statutory factors when determining whether to grant a petition for termination of residual parental rights." 174 Vt. at 428. The family court duly weighed these factors here and determined by clear and convincing evidence that termination of mother's rights was in the children's best interests. We find nothing lacking in that analysis.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

3