*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-212

SEPTEMBER TERM, 2016

| | |
|---|---|
| In re M.K., Juvenile | } APPEALED FROM:<br>}<br>} Superior Court, Chittenden Unit,<br>} Family Division<br>}<br>} DOCKET NO. 319-11-13 Cnjv |

Trial Judge: Nancy J. Waples

In the above-entitled cause, the Clerk will enter:

Mother appeals from the termination of her parental rights in daughter M.K. She argues that the court erred in concluding that she could not parent M.K. within a reasonable period of time. We affirm.

M.K. was born in October 2012. The Department for Children and Families (DCF) opened a case after her birth, but closed it after determining that mother was in treatment and attending counseling and that mother and father would be caring for M.K. with their parents' support. DCF opened a new investigation in October 2013 after mother was charged with driving under the influence (DUI) with a blood-alcohol level of twice the legal limit. The court found that prior to her arrest, father had tried to stop mother from driving, and mother almost hit him with the car. Mother then stopped the car, removed M.K., and left her in her car seat in the driveway. Mother then almost hit M.K. when she drove away. Father also reported that mother was physically abusive to him, that she called M.K. names, she was drinking heavily and using cocaine, and he was afraid that mother would harm M.K. Mother was again charged with DUI in November 2013. The court issued an emergency care order and mother later stipulated that M.K. was a child in need of care or supervision (CHINS) due to mother's alcohol and mental health issues, which had a negative impact on her ability to parent. M.K. was placed with her grandparents, where she remains. In April 2014 the lower court, without objection, approved a disposition case plan, continuing DCF custody and providing concurrent goals of reunification with a parent and adoption.

In May 2015, DCF moved to terminate parents' rights. Father voluntarily relinquished his rights and following a hearing, the court terminated mother's rights. The court found that after M.K. was taken into custody, mother missed visits and engaged in dangerous and disturbing behavior. She drove her car at M.K.'s grandparents' car when the grandfather was transporting M.K. Mother also threatened grandparents in M.K.'s presence, including throwing an ice chunk at grandfather while shouting obscenities. Mother's visits were suspended, they resumed for a short period, and then were suspended again after mother sent threatening messages to father, broke into grandparents' home by breaking the door frame, and assaulted father and a female visitor while they were sleeping. Mother continued to engage in threatening behavior, including threatening to kill grandmother. At the end of May 2014, mother pled guilty to several charges

and her probation was also revoked. Mother delayed contacting DCF after her release in June 2014, and later stormed out of a meeting with DCF personnel. Mother returned to jail on a different charge and did not contact DCF again until her release in November 2015. Visits were reinstated but quickly ended after mother once again became dysregulated, threatened grandparents and father, asked father to get her heroin, and threatened to kill herself. Mother was reincarcerated, and it was unknown when mother would be released given her history of prior violations. The Department of Corrections considered mother a violent offender who required a high level of supervision.

Based on these and other findings, the court concluded that termination of mother's rights was in M.K.'s best interests. The court explained that although mother loved M.K., she could not assume her parental duties now or in the foreseeable future given her continued instability, which included criminal behavior, numerous incarcerations, threatening behavior, emotional and mental instability, and substance abuse. She had failed to comply with DCF's case plan. She had been absent from M.K.'s life for two years, and her most recent attempts at visitation ended after mother became dysregulated and was reincarcerated. Mother had not played a constructive role in M.K.'s life. M.K. was thriving in grandparents' home and had an immediate need for a safe and structured permanent home. She could not wait to see if mother could address her numerous parental shortcomings.[*] The court thus terminated mother's rights, and this appeal followed.

Mother argues that she had made some progress while M.K. was in custody, which undercuts the court's conclusion that she could not parent M.K. within a reasonable period of time. Mother points to her testimony that she had not consumed alcohol for over a year, and her probation officer's testimony that he had not had any reports of mother using substances. Mother acknowledges that she may have sought heroin from father shortly before the TPR hearing, but she argues that there was no evidence to show that she had actually gotten or used it. Mother also asserts that although she engaged in threatening and assaultive behavior in the past, her most recent communication to father contained suicidal ideation rather than threats to harm others. Mother notes that she actively participates in relevant services in prison. Finally, mother asserts that she has progressed from being disinterested in parenting and emotionally hostile to M.K. to having a great love for her.

In assessing a child's best interests, the court must consider four statutory factors. 33 V.S.A. § 5114. The most important factor is the likelihood that the natural parent will be able to resume his or her parental duties within a reasonable period of time. See In re B.M., 165 Vt. 331, 336 (1996). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.).

---

[*] The trial court acknowledged the threshold issue of whether a substantial change in material circumstances warrants modification, but did not make any express findings or conclusions on the matter; however, the trial court's findings as to mother's lack of consistent contact with the child, lack of engagement with service providers, and continued instability including criminal behavior, numerous incarcerations, threatening behavior, emotional and mental instability, and substance abuse all support a finding of changed circumstances. On appeal, mother focuses on the evidentiary basis for the trial court's finding that she had not made progress—a finding that underlies the questions of both changed circumstances and best interests.

We find no error here. We do not agree that findings on which the conclusions rest are clearly erroneous. Further, the court's findings, supported by sufficient evidence, amply support its conclusion that mother could not parent M.K. within a reasonable period of time, and that termination of her rights was in M.K.'s best interests. As set forth above, the court found that mother exhibited extreme instability during the two years that M.K. was in custody, including threatening father, grandparents, and others, and committing new crimes, including assault. The court did not err in concluding that mother continued to engage in threating behavior. Father testified that shortly before the TPR hearing, mother sent him a message that contained not only mother's threats to kill herself by various means, but also a picture of her attempt to buy a gun, which father testified caused him to fear for his own safety. Mother had minimal contact with M.K. while she was in custody. Visits were suspended due to mother's behavior and by the time of the TPR hearing, mother had had only four visits with M.K. in two years. Mother failed to engage in the services outlined by DCF, including a substance abuse assessment, mental health treatment, and Family Time coaching. Mother has been in and out of jail, and was incarcerated at the time of the TPR hearing. Mother essentially argues that the court erred in weighing the evidence, a role reserved exclusively for the factfinder. See In re S.B., 174 Vt. 427, 429 (2002) (mem.) ("Our role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating mother's parental rights . . . ."). Whatever progress mother may have made in certain areas, the court plainly found it insufficient to override the overwhelming evidence that she could not parent M.K. within a reasonable period of time.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

3