*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-165

OCTOBER TERM, 2016

| | |
|---|---|
| In re J.B. & J.B., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Orange Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 30/31-7-13 Oejv |
| | |
| | Trial Judge: Walter M. Morris, Jr. |

In the above-entitled cause, the Clerk will enter:

Parents appeal from the trial court's order terminating their parental rights in Jae.B. and Jam.B. Father argues that the court should not have terminated parents' rights given the progress that they made in addressing the goals of their case plans. Mother argues that the court erred in faulting parents for having minimal contact with the children. We affirm.

Jae.B. was born in October 2010, and Jam.B. in April 2013.[*] Parents have experienced long-standing substance abuse issues, which also contributed to criminal convictions and supervision by the Department of Corrections. Both children were born with drugs in their system. From an early age, Jae.B. suffered from medical complications and required daily administrations of a variety of medications and consistent personal management and monitoring.

In 2013, the children were determined to be in need of care or supervision (CHINS) due to parents' drug use, and they were placed in foster care. In April 2014, Jae.B. suffered serious medical complications from prolonged seizures, requiring a crainiectomy to relieve pressure in his brain. He sustained significant damage to the left side of his brain and will have lifelong physical impairments. Jae.B. requires intense and skilled daily care and interventions.

The Department for Children and Families (DCF) filed petitions to terminate parents' rights in January 2015. Following several days of hearings, the court granted its request. The court made numerous findings, including the following. Visitation with the children initially occurred through the Family Time Coaching (FTC) program. Parents visited inconsistently, and when visits did occur, parents often arrived too late to engage in meaningful preplanning. Mother resisted suggestions for improving her interactions with the children, and neither parent could recognize or respond to the children's cues during visits. Parents' sporadic attendance at FTC visits and repeated failures to appear without notice significantly contributed to their failure to assume greater parenting responsibilities.

Parents ended all contact with Jam.B. in December 2014 and with Jae.B. in May 2015. The parties disputed who was to blame for the cessation of visits. The court found that mother had

---

[*] Parents also have a third child, Jo.B., born in September 2014.

requested visitation with both children at the same time, but then failed to reasonably pursue the opportunity for these combined visits at Umbrella, a program based in St. Johnsbury intended to foster healthy relationships by providing families with supervised visitation. The court rejected as not credible parents' assertion that they repeatedly tried, in vain, to pursue regular contact with the children. It found that despite direct assistance in contacting the Umbrella program, parents failed to complete enrollment or follow through with actual visits. With additional direct assistance, parents ultimately managed to complete an intake for visitation services with the Umbrella program in May 2015, but they then failed to keep sustained contact with the program to actually initiate the visits that had been planned for. The court found that parents had the means and ability to establish regular parent-child contact but they failed to do so.

The court found that parents had no functional relationship with Jam.B. They had had no contact with him for over ten months, and they had not provided him with any parental care during that time. Parents had not moved toward resuming any meaningful exercise of parental responsibilities for Jam.B. To the contrary, they had effectively abandoned him. In the interim, Jam.B. had fully bonded to his foster parents, who provided him with excellent care. Parents similarly ceased to engage in any meaningful parenting of Jae.B. Their interactions with him were sporadic, and they had not provided him with physical or emotional care. Jae.B. had been in the primary care of his foster parents for prolonged periods of time, and he had developed strong bonds with his foster parents. The foster parents provided for his physical and emotional needs.

The court recognized that parents had had success in other areas. They had achieved housing stability by the time of the TPR hearing. Both had made good progress in resuming and maintaining sustained sobriety. Nonetheless, the court noted that there had been periodic and continued conduct that placed their sobriety at risk. The court found that while parents had generally complied with their individual responsibilities, they failed to comply with the case plan responsibilities most directly related to resuming their relationship and parenting of the children. They had not engaged in consistent, meaningful, and successful progression in Family Time Coaching while it was available, but instead had had sporadic, lapsed, and insubstantial engagement with Jae.B., and had entirely severed any contact or relationship with Jam.B.

Based on these and numerous additional findings, the court concluded that parents had stagnated in their ability to parent and that they could not become fit to parent the children within a reasonable period of time. The court explained that, in this case, stagnation had to be considered in the unique context of parents' effective abandonment of their parental roles and responsibilities, and could not simply be measured by parents' personal progress in achieving sobriety and general case plan goals. While parents might have achieved their individual case plan goals, they had effectively abandoned the parental relationship and the exercise of parental responsibility for periods of time critical to the children's needs for permanency and stability. The court found that, with respect to Jam.B., parents' abandonment of contact for over a year—during which time he firmly bonded with and developed in the beneficial care of his foster parents—was unquestionably such a substantial change of circumstances as to warrant jurisdiction to examine whether termination of parents' rights was in his best interests. As to Jae.B., the court found that substantial change was clearly presented by the medical emergency that he suffered while in DCF custody, and his present enduring, complex caretaking needs. It added that in Jae.B.'s case as well, parents' lack of progress in furthering a meaningful parental role constituted a change in circumstances.

The court also concluded that parents could not assume their parenting responsibilities within a reasonable period of time. They made no progress in assuming greater exercise of parenting responsibilities, and the children could wait no longer to have permanency of parenting

and home life. They had abandoned any relationship with Jam.B. With respect to Jae.B., parents had never exercised a parental role for him in the context of his present complex therapeutic needs. He had not lived in his parents' custody since July 2013, and he received highly skilled, intense and consistent caretaking in his present placement. The evidence of the parent-child contact that did occur since he came into custody, moreover, established parents' inability to recognize, respect, and respond to his emotional cues, and their contact with him had served as a source of distress and unease to him. The court found that mother and father could not parent Jae.B. within a reasonable period of time given their sparse parent-child contact, the complexity and intensity of Jae.B.'s present treatment and caretaking needs, and parents' failure to participate in this caretaking. After considering the remaining best-interest factors, the court terminated parents' rights in both children. This appeal followed.

We begin with father's arguments. According to father, the evidence fails to show stagnation or that parents are unable to resume their parental responsibilities within a reasonable period of time. Father points to the progress that he and mother made in addressing certain goals under their case plans. He notes that parents' third child, Jor.B., was not found to be CHINS. Father also contends that there was no evidence to show that parents could not meet Jae.B.'s special needs. Father acknowledges that parents' contact with the children "has dropped significantly in the past year," but argues that parents have an established relationship with the children that can be rebuilt.

As we have often explained, when the termination of parental rights is sought post-disposition, the trial court must first find that there has been a substantial change in material circumstances, and if so, that termination of parental rights is in a child's best interests. In re B.W., 162 Vt. 287, 291 (1994); see also 33 V.S.A. § 5114 (setting forth best-interests standard). "[A] substantial change in material circumstances[] is most often found when the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time." In re B.W., 162 Vt. at 291 (quotation omitted). "Stagnation may be shown by the passage of time with no improvement in parental capacity to care properly for the child." Id. (quotation omitted). But "the mere fact that a parent has shown some progress in some aspects of his or her life does not preclude a finding of changed circumstances warranting modification of a previous disposition order." In re A.F., 160 Vt. 175, 181 (1993).

To determine a child's best interests, the court must consider the four statutory factors described in 33 V.S.A. § 5114. The most important factor is the likelihood that the natural parent will be able to resume his or her parental duties within a reasonable period of time. See In re B.M., 165 Vt. 331, 336 (1996). As long as the court below has applied the proper standard, we will not disturb its factual findings on appeal unless they are clearly erroneous, and we will affirm its legal conclusions if they are supported by the findings. In re B.W., 162 Vt. at 291.

We find no error here. As to stagnation, the court recognized that parents had made progress in addressing their drug addictions, although they continued to engage in risky behavior. It acknowledged that they had complied with the individual responsibilities in their case plans. Nonetheless, it found that they wholly failed to maintain any relationship with Jam.B. and had only minimal contact with Jae.B., and that they failed to progress toward assuming any parenting responsibilities for the children. Parents' failure to make any progress in this key area, over an almost two-year period, amply demonstrates that they had stagnated in their ability to parent. The fact that parents have a third child, who was not found to be CHINS, does not undermine this conclusion or in any way minimize the impact of parents' failure to maintain contact with Jam.B. and Jae.B. or otherwise make progress in assuming greater parenting responsibilities for these

children.  We note that, with respect to Jam.B., the disposition plan required parents to maintain regular consistent contact with him, which they clearly failed to do.  As to Jae.B., the court also found that his acute medical crisis and complex needs constituted a substantial change in circumstances.  Father does not challenge this finding on appeal.  The court's finding of stagnation is supported by the record.

The court similarly did not err in concluding that parents would be unable to parent the children within a reasonable period of time.  As set forth above, parents had no relationship with the children, and they provided minimal parental care while the children were in custody.  Jam.B. had spent almost his entire life in foster care and was bonded to his foster parents.  Jae.B. had very special needs, and the court reasonably found that parents' failure to maintain contact with him and their inability to respond to his cues when visitation did occur made it unlikely that they could resume providing him with parental care.  The court reasonably concluded that the children, after almost two years in DCF custody, had an immediate need for stability and permanency.  While father argues that parents could have rebuilt their relationship with the children, the court concluded otherwise, and its decision is supported by the evidence.  This Court does not reweigh the evidence on appeal.  See In re S.B., 174 Vt. 427, 429 (2002) (mem.).

Turning to mother's arguments, she contends that the court erred in finding that she and father failed to pursue regular contact with the children.  Mother points to parents' testimony that they made numerous calls to Umbrella to schedule visitation, leaving messages and receiving no responses.  She questions the veracity of the testimony provided by the Umbrella program director who said no such messages had been received.  Mother also notes that, at least until the Family Time Coaching program ended, parents "expressed love and affection for the children."

Mother merely challenges the trial court's assessment of the credibility of witnesses and the weight of the evidence, matters reserved exclusively for the trial court.  See id., at 429-30.  The court rejected parents' testimony, referenced above, as not credible.  It instead relied on testimony that Umbrella had not received any calls from parents, and that Umbrella employees had reached out to parents but could not connect with them.  The evidence showed that parents were provided with contact information for Umbrella, including the private cellphone number of the director, but they never followed through.  The record amply supports the court's finding that parents were responsible for their failure to maintain contact with the children.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice


_____
Beth Robinson, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice

4