*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-358

FEBRUARY TERM, 2017

In re C.N. and D.N., Juveniles　　　　　　　} 　　APPEALED FROM:
　　　　　　　　　　　　　　　　　　　　　　}
　　　　　　　　　　　　　　　　　　　　　　} 　　Superior Court, Windham Unit,
　　　　　　　　　　　　　　　　　　　　　　} 　　Family Division
　　　　　　　　　　　　　　　　　　　　　　}
　　　　　　　　　　　　　　　　　　　　　　} 　　DOCKET NO. 11/12-2-15 Wmjv

　　　　　　　　　　　　　　　　　　　　　　　　　Trial Judge:  Karen R. Carroll

In the above-entitled cause, the Clerk will enter:

Mother appeals from a family court judgment terminating her parental rights to the minors C.N. and D.N.  Mother contends the court erroneously: (1) failed to make valid findings on whether she had used illegal drugs in the months preceding the final hearing in this matter; and (2) improperly relied on psychological testing to conclude that she could not resume parental responsibilities within a reasonable period of time.  We affirm.

The facts may be summarized as follows.  In late January 2015, the children, D.N. and C.N., were taken into custody by the Department for Children and Families pursuant to an emergency care order based on the court's findings that mother was an active opiate addict and drug abuser and could not care for the children due to her drug use and mental health treatment needs.  The court also noted that C.N. had reported sexual abuse at the hands of mother's boyfriend.  D.N. was seven and C.N. was five years old at the time.  The children were placed in foster care, where they have since remained.  Father was not living with mother at the time, was not involved in the children's lives, and has not appealed from the court's decision to terminate his parental rights.

The State filed a CHINS petition in early February 2015.  Although DCF encouraged mother to engage in substance abuse and mental health treatment, she failed to do so, and in April 2015 she was incarcerated in New Hampshire on criminal charges.  Mother stipulated to an adjudication of CHINS the same month, and returned to Vermont in May 2015.  A case plan filed with the court that month identified concurrent goals of reunification by December 2015, or adoption. The plan of services called for mother to participate in an intensive outpatient treatment program, obtain a substance abuse assessment, engage in substance abuse counseling and individual mental health therapy, sign all releases requested by DCF, and attend all supervised visits with the children.

Mother was reincarcerated in New Hampshire for a violation of probation for three weeks in June 2015.  Mother's visits with the children were suspended that month while she was incarcerated, based on the children's symptoms of post-traumatic stress associated with earlier visits, including sexualized behaviors.  Visits resumed in July 2015, but mother's attendance decreased dramatically over the next several months.  In November 2015, mother was

reincarcerated in New Hampshire for parole violations resulting from her use of illegal substances, including opiates. Mother reported that while incarcerated she participated in a parenting course and some recovery groups. The recovery groups were not a substitute for the substance abuse programming that mother was required to meet as part of her case plan. Mother was released in January 2016, but further visits were conditioned on her engaging in mental health and substance abuse treatment.

Mother failed to engage in the mental health and substance abuse services called for in the case plan and considered necessary by DCF to safely parent the children. In addition, both children suffered from significant signs of trauma that were aggravated by visits with their mother, and reduced somewhat in the absence of those visits. For these and other reasons, the State filed a petition to terminate parental rights in January 2016.

The court held a two-day evidentiary hearing on the petition in June 2016, and thereafter issued a written decision containing extensive findings and conclusions. In summary, the court found that, after more than a year, mother had "yet to address her significant substance abuse and mental health problems through appropriate treatment" and had shown no "improved capacity to care for the children," which in turn supported a finding of changed circumstances.

Applying the statutory best-interests-of-the-child criteria, the court found that the children's relationship with mother was practically nonexistent, while in contrast they had bonded with their foster family, who provided them with a stable and loving environment in which to address the significant emotional and physical trauma from their early years. The court further found that mother had failed to meet the children's needs for safety and structure when they lived together—a psychotherapist who evaluated the family reported that mother rejected C.N.'s reports of abuse and had "great difficulty" accepting any responsibility for the serious psychological trauma exhibited by D.N. and C.N. Mother had stopped attending supervised visits, had not seen the children for over six months at the time of the hearing as a result of her failure to seek treatment, and for an extended period had played no constructive role in their lives. Finally, the court concluded that mother could not resume parental responsibilities within a reasonable period of time, observing that she had "exposed both children to serious abuse and violence" for which she had "yet to recognize and assume responsibility," and had yet to address the "significant drug abuse and mental health issues" which had caused the children to come into State custody in the first instance. Accordingly, the court granted the petition to terminate parental rights. This appeal followed.

In reviewing the judgment, the Court's "role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating mother's parental rights." In re S.B., 174 Vt. 427, 429 (2002) (mem.). Thus, we will uphold the court's findings unless clearly erroneous, and its conclusions if reasonably supported by the findings. In re A.F., 160 Vt. 175, 178 (1993).

Mother asserts that the court's conclusion that she could not resume parental responsibilities within a reasonable time was flawed because the court failed to account for her claimed sobriety during the six or seven months preceding the final hearing in June 2016. The court acknowledged the evidence of sobriety cited by mother. That includes her claim that she had participated in a recovery group while incarcerated in late 2015, her testimony that she had participated in an AA/NA program since her release from prison in January 2016, her father's opinion that she was now clean and sober, and a housing case manager's testimony that she had not observed signs of drug use by mother since February 2016.

2

However, the court also found that mother used drugs throughout the course of the case plan prior to her last incarceration, that the services mother received when she was incarcerated were not equivalent to the intensive outpatient treatment required by the case plan, that she had admitted that she continued to use marijuana, and that given mother's concurrent mental health issues she would need to be abstinent for one to two years before she could even begin the intense mental health treatment that she required. Given these findings, which are supported by the evidence, we cannot conclude that the trial court erred by failing to make a specific finding as to whether and how long mother had been abstinent, or by failing to assign more weight to that factor. See In re A.F., 166 at 178 ("We leave it to the sound discretion of the family court to determine the credibility of the witnesses and to weigh the evidence.").

Mother additionally contends the court placed improper reliance on psychological testing in concluding that she could not resume parental responsibilities within a reasonable time. Mother cites the court's recitation of the findings of a psychotherapist with a Ph.D. in social work who conducted a family evaluation for DCF. In particular, she challenges the evaluator's findings that mother suffered from a personality disorder that impedes her ability to parent effectively, and that mother would "require[] intense mental health treatment and a sustained period of abstinence from substance abuse" to address her mental health issues. We have cautioned against overreliance on the results of tests that purport to identify "inherent personality traits" such as the Minnesota Multiphasic Personality Inventory (MMPI). In re B.M., 165 Vt. 331, 339 (1996). But a trial court nevertheless retains broad discretion in assessing the weight to be accorded expert testimony, State v. Pratt, 2015 VT 89, ¶ 30, 200 Vt. 64, and nothing in the record here suggests that the court relied primarily on the evaluator's findings based on psychological testing as a basis for its conclusion that mother could not resume parental responsibilities within a reasonable time. That conclusion was amply supported by the record evidence showing that mother had failed for over a year to meet the expectations of the case plan or to make any significant progress toward developing the capacity to safely parent the children, the court's findings regarding the children's symptoms of trauma and mother's impact on those symptoms, and mother's course of conduct prior to and following the CHINS petition.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

3