VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     24-AP-143



*Note: In the case title, an asterisk (*) indicates an appellant and a double asterisk (**) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

OCTOBER TERM,   2024

| | |
|---|---|
| In re M.G., Juvenile (W.G., Father*) | }    APPEALED FROM: |
| | } |
| | }    Superior Court, Caledonia Unit, |
| | }    Family Division |
| | }    CASE NO. 74-11-20 Cajv |
| |     Trial Judge: Benjamin D. Battles |

In the above-entitled cause, the Clerk will enter:

Father appeals from the termination of his parental rights in daughter M.G.  We affirm.

M.G. was born in November 2020.  Shortly after her birth, the Department for Children and Families (DCF) received reports that M.G. was exhibiting symptoms of opioid withdrawal or neonatal abstinence syndrome (NAS), as well as reports expressing concern about mother's substance use, father's prior criminal offenses, and both parents' knowledge and ability to care for a newborn.  Seven days after her birth, DCF filed a petition alleging that M.G. was a child in need of care or supervision (CHINS) based on parents' inability to provide her with proper parental care.  M.G. was taken into DCF custody pursuant to an emergency care order and placed with her paternal grandmother pursuant to a conditional custody order (CCO).  M.G. remained with grandmother for one year until grandmother was hospitalized.  The CCO was then amended to include father as a custodian for M.G.  Not long thereafter, father was arrested following an alleged domestic assault of his partner, which occurred in M.G.'s presence.  M.G. was returned to DCF custody in early February 2022, and then—upon father's release from jail in March 2022—returned to father's care for a trial reunification.  In December 2022, father was arrested for violating his conditions of release, including by possessing fentanyl, and M.G. was again removed from his care and placed in a foster home.

In December 2022, the court adjudicated M.G. as CHINS based on parents' inability to provide attentive care for her as she was exhibiting symptoms of NAS.  In January 2023, father was arrested and charged with assault and robbery and related charges for allegedly robbing a bank.  He has been incarcerated since this arrest.  In February 2023, father was charged with failing to register as a sex offender, second or subsequent offense.

The court issued a disposition order in 2023, continuing DCF custody and adopting DCF's case plan, which set a goal of reunification with either parent by October 2023.  The case

plan contained action steps for both parents. In December 2023, the State moved to terminate parents' rights. Following a hearing, the court granted its request.

The court made numerous findings, including the following. Mother had not seen M.G. since November 2021 and had no current relationship with her. Father, by contrast, had consistently engaged with DCF. He had been sober since his January 2023 incarceration. He had regular family time with M.G. in the correctional facility, which had gone well. The court found, however, that significant concerns remained. While father was providing primary care for M.G., he missed or was late to many of her medical appointments. More concerningly, the court explained, he was alleged to have consistently engaged in criminal behavior during this period and was charged under at least six separate criminal dockets with numerous serious criminal charges, including aggravated domestic assault with a weapon, fentanyl trafficking, assault and robbery, and failure to register as a sex offender. These charges remained pending at the time of the termination hearing. Father testified that he had been offered a global plea deal under which he could potentially be released on probation in several months. No final agreement had been reached, however, and the court noted that the maximum sentence for the fentanyl trafficking charge alone was thirty years. M.G. had been in the same foster home since December 2022. Her foster parent was meeting her needs.

Based on these and other findings, the court found that each parent had stagnated in their ability to provide proper parental care to M.G. It considered the statutory best-interests factors and concluded, as to father, that while he shared a bond with M.G. and played a constructive role in her life, he could not parent her within a reasonable time. Father acknowledged at the hearing that he could not currently parent M.G. given his incarceration. Even if father were to be released in the coming months, the court found that he would need to obtain stable housing and employment, which would take more time. The court explained that M.G. had been in DCF custody, or under DCF supervision, for three-and-a-half years—her entire life—and she deserved permanency. Her foster mother could provide that permanency in a safe and healthy environment. The court thus concluded that while one of the factors weighed against terminating father's rights, all of the remaining factors supported terminating parents' rights and freeing M.G. for adoption. The court thus granted the State's petition. This appeal followed.

"Termination of residual parental rights at a modification hearing requires a two-step analysis." In re B.M., 165 Vt. 331, 335 (1996). First, the court must consider if there are changed circumstances that warrant modification of the existing disposition order. If so, the court must consider if termination of parental rights is in a child's best interests, guided by statutory criteria. "The critical factor is whether the natural parent will be able to resume parental duties within a reasonable period of time." Id. at 336. On appeal, we will affirm the trial court's findings unless they are clearly erroneous, and we will affirm its conclusions if supported by the findings. Id. at 340.

Father first argues that the court improperly relied upon hearsay in finding that he had stagnated in his ability to parent and that he would be unable to resume parenting M.G. within a reasonable time. He complains that, in her testimony, the DCF caseworker relied on case notes made by her predecessors and on other hearsay statements made to her in this process. In support of this assertion, father cites only the caseworker's testimony that other individuals previously worked on the family's case. He does not identify any particular hearsay testimony that he contends was improperly relied upon, which caused him harm.

As father acknowledges, hearsay is admissible in termination proceedings. See 33 V.S.A. § 5317(b) ("Hearsay may be admitted and may be relied on to the extent of its probative value."). Father fails to show that he objected below to any particular testimony on hearsay grounds, and he does not identify any particular testimony that the court erred in relying upon in reaching its decision. He failed to preserve this argument and we therefore do not address it. See In re R.L., 148 Vt. 223, 228 (1987) (holding that "parents' failure to object to the introduction of hearsay at the disposition hearing served as a waiver of their claim that its use at that hearing was error"); see also In re S.B.L., 150 Vt. 294, 297 (1988) (explaining that appellant bears burden to show "how the lower court erred warranting reversal" and "[w]e will not comb the record searching for error").

Father next asserts that the court erred in relying on statements by the attorney for the State as to his potential release date and that the court improperly required him to prove that he could resume parenting M.G.

The record does not support these arguments. The court recognized father's testimony about the possibility of a global plea agreement, although it noted the lengthy maximum sentence for just one of the crimes with which defendant was charged. The court was not required to credit father's testimony about the likelihood of his imminent release on probation, as father posits. Nonetheless, the court went on to assume arguendo that father was correct that he might possibly be released in several months and it found that he still could not parent M.G. within a reasonable time as measured from her perspective. In conducting its analysis, the court did not shift the burden of proof to father. Essentially, father disagrees with the court's evaluation of the weight of the evidence and the credibility of witnesses, matters reserved exclusively for the trial court. In re A.F., 160 Vt. 175, 178 (1993). As we have often repeated, "[o]ur role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating . . . parental rights." In re S.B., 174 Vt. 427, 429 (2002) (mem.). There was no abuse of discretion here.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

William D. Cohen, Associate Justice

Nancy J. Waples, Associate Justice