VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.    25-AP-163

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

OCTOBER TERM,   2025

In re A.S. and U.S., Juveniles  } APPEALED FROM:
(S.C., Mother*)  }
  } Superior Court; Bennington Unit,
  } Family Division
  } CASE NO. 23-JV-00132; 23-JV-00133
   Trial Judge: Kerry A. McDonald-Cady

In the above-entitled cause, the Clerk will enter:

Mother appeals from the termination of her residual parental rights in twins A.S. and U.S. She argues that the court erred in concluding that she could not resume parenting the children within a reasonable time. We affirm.

Mother does not challenge the trial court's findings, which we summarize here. A.S. and U.S. were born in February 2022. The Department for Children and Families (DCF) was concerned about mother's drug use, unstable mental health, and lack of safe and stable housing, and tried to work with mother after the children's births but mother refused services. In January 2023, the children were placed in emergency DCF custody after mother stated that she could not care for them. They were later adjudicated as children in need of care or supervision. The court found that mother's mental-health issues prevented her from thinking clearly and being able to meet the children's needs, which resulted in her calling the police and asking them to remove the children from her care. A disposition case plan was adopted in June 2023, which set forth numerous action steps for mother.

The court found that mother failed to meet any of these action steps during the two years the children were in custody. She visited the children inconsistently and often became escalated and argumentative with the visit supervisor. Mother was charged with threatening the visit supervisor in August 2023. At that time, she was also subject to supervision by the Department of Corrections for numerous felony convictions. Her community supervision was revoked and she was reincarcerated. While incarcerated, she was charged with assaulting a correctional guard with bodily fluid. Mother pled guilty to both crimes and was incarcerated at the time of the termination hearing.

Mother indicated at the termination hearing that she was on a waiting list through the Pathways program to obtain housing. She conceded that the children could not live with her if she obtained this housing. Mother stated that she intended to obtain her own apartment or move

out of Vermont if the children were returned to her custody. Mother acknowledged that she struggled with anger management and substance use. She believed she could meet the children's needs and did not need any help to do so, despite the overwhelming evidence of the children's specialized needs due to early childhood developmental delays caused in part by mother's behavior. Mother did not acknowledge the children's developmental delays or explain how she would follow through with their medical providers while also caring for the children and meeting her own mental-health needs. Mother saw no connection between her criminal conduct and a risk of harm to the children. She had minimal contact with the children during her incarceration and the children appeared dysregulated after the visits, often biting, hitting their heads, and engaging in aggressive behavior.

A.S. and U.S. were placed with a foster family in January 2023, where they have remained. The foster parents addressed the children's developmental delays and medical issues, working with numerous specialists to meet the children's specialized needs. The children made remarkable progress in their care. The children were bonded to the foster family, and the foster family provided for the children in a loving, caring, and parental way.

Based on these and other findings, the court concluded that mother stagnated in her ability to parent and that termination of her rights was in the children's best interests. It found that mother demonstrated no ability to safely care for the children nor had she shown any insight into their specialized needs. Mother continued to struggle with mental-health issues and housing instability. Her anger issues resulted in two new criminal convictions, and she had no insight about the risk her anger posed to the children. Mother appeared to dismiss concerns about her criminal conduct and blamed others, including the victim of her criminal behavior.

Turning to the statutory best-interests factors, the court concluded that they all supported termination of mother's rights. The children had been in DCF custody for two-thirds of their lives and they were closely bonded to their foster family. The foster family loved the children and met their demanding physical and emotional needs. The children were flourishing in their care. Mother's limited contact with the children caused the children to become dysregulated. The court found no likelihood that mother could resume parental duties within a reasonable time. She was incarcerated and unavailable to care for the children. Mother was serving a sentence for a violent felony. Prior to her incarceration, she was not meeting the children's basic needs. Despite visible developmental delays, mother did not engage in services for the children, even when these services were offered to her. The children needed and deserved a stable and consistent care provider, and the evidence showed that providing additional time to mother to work on the case plan goals would not result in safe reunification. She did not understand the children's specialized needs or know how to parent them safely and consistently. She lacked insight about her own mental-health needs and how that impacted her ability to safely parent the children. Based on these and other conclusions, the court determined that termination of mother's rights was in the children's best interests. This appeal followed.

On appeal, mother challenges only the court's conclusion that she could not parent the children within a reasonable time. She asserts that she could be released from jail if she obtained housing, and the Pathways program could help her address the case plan goals. Mother suggests that she should have been provided additional time in which to demonstrate improvement. Mother also asserts that, even if she was not released from jail, the court should have allowed her more time to improve because the children were in a safe environment.

We reject these arguments, all of which challenge the trial court's assessment of the evidence. The court applied the appropriate standard in evaluating the children's best interests and its decision is supported by its findings and the record. See In re G.S., 153 Vt. 651, 652 (1990) (mem.) (explaining that as long as court applied the proper standard, we will affirm its conclusions if supported by findings and record). As set forth above, the court concluded that mother could not parent the children within a reasonable time because she was incarcerated, she continued to struggle with housing instability and anger issues, she lacked insight into the children's needs, and lacked insight into how her behavior affected the children. Her limited contact with them was harmful. The children, who had been in DCF custody for two years, needed permanence and stability. The court expressly rejected the argument that allowing mother additional time would result in a safe reunification. As we have often repeated, "[o]ur role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating mother's parental rights." In re S.B., 174 Vt. 427, 429 (2002) (mem.). While mother may disagree with the court's conclusion, she has not demonstrated any error.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
William D. Cohen, Associate Justice

3