VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      23-AP-031

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JUNE TERM,   2023

| | |
|---|---|
| In re E.S., Juvenile<br>(T.S., Father\* & H.P., Mother\*) | APPEALED FROM:<br><br>Superior Court, Caledonia Unit,<br>Family Division<br>CASE NO. 55-9-20 Cajv<br>Trial Judge: Thomas J. Devine |

In the above-entitled cause, the Clerk will enter:

Parents appeal the termination of their parental rights to four-year-old daughter E.S.  We affirm.

E.S. was born in June 2019.  In September 2020, the State filed petitions alleging that E.S. and her half-siblings were children in need of care or supervision (CHINS) due to parents' use of crack cocaine, methamphetamine, fentanyl, and other substances, and allegations that father was dealing drugs in the home.  The court issued a temporary care order transferring custody of the children to the Department for Children and Families (DCF).  E.S. and her half-sister were placed with their maternal grandparents, who have cared for them since that time.

The court determined that E.S. was a CHINS in March 2021.  After a disposition hearing in May 2021 at which parents did not appear, the court continued DCF custody and adopted a goal of reunification with mother by December 2021.  The case plan called for both parents to complete substance-abuse and mental-health assessments and follow treatment recommendations, abstain from illegal or nonprescribed substances, obtain safe and stable housing and legitimate means to support their children, attend family time visits, and learn about the children's developmental needs and how domestic violence impacted them.  Father was additionally expected to complete a Parenting with Respect class, not use physical aggression or intimidation with other people, including mother, and not have further police involvement.

In November 2021, the State filed a petition to terminate parents' rights to E.S.  It simultaneously moved to suspend all contact between parents and E.S. or her grandparents.  In an affidavit attached to the motion, a DCF worker stated that father had recently been involuntarily hospitalized after a suicide attempt; mother was discharged from inpatient substance-abuse treatment in October 2021 due to lack of engagement; both parents had recently tested positive for fentanyl and other substances; and both parents had missed numerous visits with E.S. since May 2021.  The affidavit further stated that during a visit at the DCF office in

October 2021, mother asked to bring E.S. outside to see father and, when staff denied her request, tried to run out of the building with E.S. Mother eventually gave E.S. back to staff, threatening them as she exited the building. She then broke into maternal grandmother's vehicle and began throwing things on the ground. During this incident, father was in his car with his eyes closed and appeared to be under the influence.

The court issued a temporary order suspending parent-child contact and prohibiting contact between parents and E.S. or her grandparents. The order was vacated at the State's request in January 2022 and visitation was allowed to resume.

The court heard evidence on the termination petition over two days in September and October 2022. It subsequently issued a written order containing the following findings. Both parents were abusing illicit substances during the months leading up to the CHINS petition. In February 2021, while the merits hearing was pending, a search warrant was executed at parents' home. The police seized a large quantity of firearms, cash, fentanyl, and crack cocaine. Both parents were charged with multiple felonies. Father has since been charged with new criminal offenses. In April 2021, parents were evicted from their apartment. They have not had stable housing since that time.

In the months after disposition, parents continued to struggle with substance abuse. They participated in medication-assisted treatment at BAART, which required them to undergo random urinalysis screens. They tested positive on multiple occasions for unprescribed substances including fentanyl and cocaine. There were times when DCF did not seek further testing because parents candidly admitted that the results would be positive for illicit substances. Father completed an initial substance-abuse assessment but did not participate in a more comprehensive assessment that was recommended by staff at BAART, resulting in his discharge from the program. Mother was also discharged from the program in January 2022 and subsequently refused to provide any urinalysis samples to DCF.

Neither parent participated in a mental-health assessment or treatment. Mother did not engage in domestic-violence counseling or other related programming. Father did not complete the Parenting with Respect class or any other parental education programs. After parents were evicted, they did not maintain regular contact with DCF.

Mother had some successful visits where she engaged with E.S. and displayed love and affection. However, from September 2020 to September 2022, mother attended only forty-one visits with E.S. Mother sometimes called a few minutes before the visit to report that she did not have a ride. Other times, she simply failed to appear. Mother did not appear to understand the impact of the missed visits on E.S.

Father's attendance at visits was even poorer. Early in the case, he attended several supervised visits. E.S. was excited and happy to see father. He played games with her, was attentive to her needs, and displayed love and affection. However, there were long gaps between father's visits, including one ten-month period when father had no contact with E.S.

The court found that the September 2021 incident when father threatened suicide, and the October 2021 visit when mother attempted to take E.S. out of the DCF office, occurred as stated in the DCF worker's affidavit and caused the court to suspend parent-child contact. It found that mother's loss of control at the DCF office caused E.S. needless distress, and that both parents continued to need mental-health assessment and treatment. In December 2021, parents met with the DCF worker and mother apologized. Parents agreed not to go to the DCF office without an

appointment and to conduct themselves in a respectful manner. Parent-child contact resumed after that. However, in March 2022, father stopped attending visits and ceased all communication with DCF. Mother stopped attending visits in June 2022. The court found that parents "effectively disappeared" during the summer of 2022. In August 2022, father was arrested and held for lack of bail.

That same month, mother entered residential treatment at Valley Vista. She successfully completed the program and was discharged in mid-September 2022. Mother went to a hotel where she had a successful visit with E.S. and maternal grandmother. After they left, however, mother used crack cocaine. She admitted this relapse to her treatment providers and enrolled in a sixty-day rehabilitation program in New Hampshire. At the time of the October 2022 termination hearing, mother was in good standing at that program. She had not used fentanyl for over sixty days and had not used cocaine since mid-September 2022. This was mother's longest period of sobriety in two years.

The court found that mother had made some progress but was still in the early stages of recovery. She had made plans for housing and employment, but did not yet have either. Her criminal charges remained pending. She continued to deny the need for DCF or court intervention in the family and was adamant that her substance abuse had not interfered with her ability to care for her children. Mother also believed E.S. could immediately transition back to mother's care once mother was ready. The court found that mother did not understand the impact of her substance abuse on E.S. or the child's emotional needs.

Father began substance-abuse treatment after he was incarcerated. He attended counseling sessions twice a week. His recent urine screens had tested negative for unprescribed substances. He hoped to enter a residential treatment program and then find work as a roofer. The court found that father had made a good start in recovery but had not yet demonstrated a sustained period of sobriety. In October 2022, father spoke to E.S. by telephone, which was his first contact with her since March 2022. Father was optimistic that E.S. could transition back to parents' care without difficulty. The court found that father also lacked insight into E.S.'s emotional needs.

The court found that there had been a change in circumstances justifying modification of the disposition order, namely, parents' "near-total lack of engagement in the case plan." It then considered whether termination of parental rights was appropriate, using the factors set forth in 33 V.S.A. § 5114(a). It found that parents loved E.S. and she loved them, but neither parent had cared for E.S. for a sustained period of time since the case began, and the quality of her relationship with them had been negatively impacted by their substance abuse. In the meantime, E.S. had formed a close and loving bond with her grandparents, looked to them for comfort, and was thriving in their care. Parents had recently made encouraging progress toward sobriety, but their recovery was still uncertain. They were also both facing serious felony charges. Accordingly, the court found that neither parent was likely to be able to resume parental duties within a reasonable time. The court also found that, although both parents were capable of playing a constructive role in E.S.'s welfare, they had been unable to do so for a long period due to their substance abuse. The court therefore concluded that termination of parental rights was in E.S.'s best interests. This appeal followed.

On appeal, both parents argue that the court erred in finding changed circumstances based on parental stagnation. When the State seeks to terminate parental rights after initial disposition, the court must first determine whether there has been a change in circumstances justifying

3

modification of the original disposition order. In re B.W., 162 Vt. 287, 291 (1994). The requisite change in circumstances "is most often found when the parent's ability to care properly for the child has either stagnated or deteriorated over the passage of time." Id. (quotation omitted). "The key question for the court when considering whether stagnation has occurred is whether the parent has made progress in ameliorating the conditions that led to state intervention." In re T.M., 2016 VT 23, ¶ 12, 201 Vt. 358 (quotation omitted). "We will affirm the court's decision if the findings are based on the evidence and support the court's conclusions." In re D.M., 2004 VT 41, ¶ 5, 176 Vt. 639 (mem.).

Mother argues that the court erred in finding stagnation because by the final day of the termination hearing, she had been sober for over a month. Father similarly argues that he had embarked on a period of sobriety and was participating in treatment. "But the mere fact that a parent has shown some progress in some aspects of his or her life does not preclude a finding of changed circumstances warranting modification of a previous disposition order." In re A.F., 160 Vt. 175, 181 (1993). Although both parents made strides toward recovery in the month or two preceding the final termination hearing, the court found that they had otherwise failed to meaningfully engage with the case plan for the two preceding years. They never took steps to address their own mental-health needs or to understand the impact that domestic violence had on E.S. They lacked stable housing or employment. Both had pending criminal charges and father was incarcerated. They had never progressed to unsupervised overnight visits with E.S. Their attendance at visits was inconsistent and neither parent had seen E.S. for months. These findings are unchallenged by parents and support the court's finding of parental stagnation. See id.

Parents also challenge the court's assessment that termination was in E.S.'s best interests. When the threshold condition of changed circumstances is met, the court must then consider whether termination is in the child's best interests in accordance with the factors set forth in 33 V.S.A. § 5114(a). "The most important factor for the court to consider is the likelihood that the parent will be able to resume parental duties within a reasonable time." In re J.B., 167 Vt. 637, 639 (1998) (mem.). "The reasonableness of the time period is measured from the perspective of the child's needs . . . ." In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29.

Mother argues that the court's analysis of the resumption-of-parental-duties factor was not "forward-looking" because it failed to consider that mother was now doing well and would be able to resume parenting E.S. within a few months. See In re B.M., 165 Vt. 331, 337 (1996) (recognizing that court's best-interests analysis must look toward future). Father similarly argues that it was unnecessary to terminate his parental rights because he would be able to resume parenting soon. We disagree. The court acknowledged that both parents had recently achieved sobriety. It reasoned, however, that "successful recovery involves not just abstinence from substances but the development of tools and skills to avoid relapse," a process that was uncertain but would likely be lengthy. The court observed that it had taken two years for parents to begin to make progress, which was a significant amount of time in E.S.'s young life. Further, the court found that neither mother nor father had addressed the other issues that were identified in the case plan as root causes of state involvement, namely, mental health, domestic violence, and an understanding of the impact that the latter had on E.S. Parents' ability to resume parental duties was made even more uncertain by their lack of housing and employment and the fact that both had serious pending felony charges. Parents also lacked insight into the impact on E.S. of removing her from the care of her grandparents, with whom she had formed a loving and stable bond. While parents optimistically believed they could overcome these obstacles within a few months, the court essentially found this timeline to be unrealistic. These findings are supported by the record and in turn support the court's decision.

4

Finally, mother argues that the court should have given more weight to the facts that she had been E.S.'s primary caregiver for the first fifteen months of E.S.'s life, did not develop a substance-abuse problem until she was thirty-one, and had a loving relationship with E.S. "Our role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating mother's parental rights . . . ." In re S.B., 174 Vt. 427, 429 (2002) (mem.). The court acted within its discretion in weighing these facts against the other evidence and determining that termination was in E.S.'s best interests. See In re M.B., 162 Vt. 229, 238 (1994) (recognizing that public policy does not require maintaining parent-child bond regardless of cost to child).

Affirmed.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice

_____
William D. Cohen, Associate Justice

_____
Nancy J. Waples, Associate Justice